UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| LOCAL 295 IBT EMPLOYER GROUP WELFARE FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| vs. | ) ) | |
| COMPASS MINERALS INTERNATIONAL, INC., FRANCIS J. MALECHA, JAMES D. STANDEN, and ANTHONY J. SEPICH, | ) ) ) ) | |
| Defendants. | ) ) | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Local 295 IBT Employer Group Welfare Fund ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned counsel, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon investigation as to all other matters conducted by and through plaintiff's counsel, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Compass Minerals International, Inc. ("Compass Minerals" or the "Company"), as well as media, analyst, and government publications about the Company.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## BACKGROUND AND OVERVIEW

1.     This is a securities fraud class action on behalf of all purchasers of Compass Minerals common stock between October 31, 2017 and November 18, 2018, inclusive (the "Class Period").  This action is brought against Compass Minerals, its former Chief Executive Officer ("CEO"), Francis J. Malecha ("Malecha"), its former Chief Financial Officer ("CFO"), James D. Standen ("Standen"), and its former Senior Vice President, Anthony J. Sepich ("Sepich"), for violations of the Securities Exchange Act of 1934 ("1934 Act") and SEC Rule 10b-5 promulgated thereunder.

2.     Compass Minerals mines and produces essential minerals, including salt for winter roadway safety and other consumer, industrial, and agricultural uses, and specialty plant nutrition minerals that improve the quality and yield of crops.  During the Class Period, the Company operated three business segments: the Salt segment, the Plant Nutrition North America segment, and the Plant Nutrition South America segment.  The Salt segment represented approximately 60% of the Company's consolidated revenues during the Class Period.  The Company's Salt products are used in a wide variety of applications, including as a deicer for roadways, consumer and

professional use, as an ingredient in chemical production, for water treatment, human and animal nutrition, and for a variety of other consumer and industrial uses.

3.     Within the Salt segment, Compass Minerals operated the largest underground rock salt mine in the world in Goderich, Ontario, Canada ("Goderich" or the "Goderich mine"), which the Company routinely hailed as the "crown jewel" of its asset portfolio.  The Goderich mine accounted for roughly one-third of the Company's earnings during the Class Period.  Prior to the start of the Class Period, defendants announced that the Company was investing in upgrades to the mining system at Goderich, from drilling-and-blasting to continuous mining and continuous haulage ("CMCH"), primarily in an effort to reduce costs and improve profitability.  At that time, the Company forecasted the project would cost $70-$80 million and, after it was fully implemented, would reduce the unit cost at Goderich by over 23%, saving the Company approximately $30 million annually beginning in 2018.

4.     During the Class Period, defendants repeatedly assured investors that the CMCH upgrade at the Goderich mine was on track to materially reduce costs and boost the Company's operating results starting in 2018.  Defendants' statements were misleading because they failed to tell investors that costs at the Goderich mine were increasing rather than decreasing.  Defendants also misrepresented the amount of salt the Company was able to produce at Goderich using the new CMCH equipment, and failed to disclose how the known and ongoing production shortfalls it was experiencing were reasonably expected to reduce its future operating income.

5.     On October 23, 2018, the Company pre-announced third quarter 2018 financial results that were significantly below expectations and lowered its outlook for the remainder of the year.  *See* ¶28, *infra*.  Following this announcement, the price of Compass Minerals stock declined by more than 30% over the following two days.  Then, before the market opened on November 19, 2018, the Company announced the abrupt termination of its CEO, Malecha.  *See* ¶30, *infra*.

Following this announcement, the price of Compass Minerals stock declined by 8% over the following three days.

## JURISDICTION AND VENUE

6.      The claims asserted herein arise under §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) and §27 of the 1934 Act.  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this District.  In addition, the Company's principal executive offices are located in this District.

9.      In connection with the acts, transactions, and conduct alleged herein, defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

10.      Plaintiff Local 295 IBT Employer Group Welfare Fund purchased Compass Minerals common stock during the Class Period, as described in the certification attached hereto and incorporated herein, and suffered damages as a result of the violations of the federal securities laws alleged herein.

11.      Defendant Compass Minerals International, Inc. is a Delaware corporation headquartered in Overland Park, Kansas.  Compass Minerals common stock trades on the New York Stock Exchange ("NYSE") under the symbol "CMP."

12.     Defendant Francis J. Malecha served as CEO of Compass Minerals during the Class Period.

13.     Defendant James D. Standen served as CFO of Compass Minerals during the Class Period.

14.     Defendant Anthony J. Sepich served as Senior Vice President, Salt segment, of Compass Minerals during the Class Period.

15.     Defendants Malecha, Standen, and Sepich (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

16.     On October 30, 2017, after the market closed, Compass Minerals filed with the SEC a Form 8-K announcing its financial results for the third quarter of fiscal 2017.  On the following day, October 31, 2017, the Company held an earnings call for analysts and investors to discuss the third quarter results.  On the earnings call, defendant Malecha assured investors:

> ***Installation of continuous mining and haul systems at the Goderich mine is also on track***, even with the partial roof collapse we experienced in September.  We are currently commissioning the final continuous mining system and expect to complete this in 2017 in fourth quarter.

\*      \*      \*

Our cost-savings plan initiated in July as part of this overarching effort to improve our operational performance and increase efficiency.  This plan to eliminate $20 million in ongoing costs in 2018 is on track. . . .  ***These savings are in addition to the $30 million in cost reductions we expect to achieve in 2018 from our investment in continuous mining at Goderich***.

17.     Also on October 31, 2017, Compass Minerals filed with the SEC a Form 10-Q for the third quarter of fiscal 2017.  In the Form 10-Q, the Company attributed the decrease in Salt earnings and gross profits to various costs overruns, unrelated to the CMCH transition:

- A $6.2 million decrease in Salt segment gross profit partially offset the plant nutrition business' increase.  The decrease was primarily due to lower consumer and industrial sales volumes, higher per-unit shipping costs and restructuring costs.

\*      \*      \*

- Salt operating earnings decreased 25%, or $7.5 million, due to lower sales as well as increased logistics costs and approximately $2 million of restructuring costs applicable to the Salt segment.

18.     On February 13, 2018, after the market closed, Compass Minerals filed with the SEC a Form 8-K announcing its financial results for the fourth quarter of fiscal 2017.  On the following day, February 14, 2018, the Company held an earnings call for analysts and investors to discuss the fourth quarter results.  On the earnings call, defendant Standen stated:

[W]e expect a healthy rebound in operating margins in the second half of 2018.  Second half 2018 margins will also benefit from continuous mining savings at Goderich.  We already achieved about $5 million of savings in 2017 when we finished installing the fourth [CMCH] mining system and completely stopped drilling and blasting in the fourth quarter.

\*      \*      \*

Our Goderich mine transition is already delivering benefits, and is expected to deliver $30 million in run rate savings by the end of 2018 . . . .

19.     Following the release of the fourth quarter 2017 results, Compass Minerals's stock price declined by 9.1% over the following two trading days.

20.     On February 27, 2018, Compass Minerals filed with the SEC a Form 10-K for the fiscal year ended December 31, 2017.  In the Form 10-K, the Company disclosed the "Annual Production Capacity" for Goderich as eight million tons of salt per year.  The Company represented that:

> Annual production capacity is our estimate of the tons that can be produced assuming a normal amount of scheduled down time and operation of our facilities under normal working conditions, including staffing levels, based on actual historical production rates.  As we introduce new production methods, such as continuous mining at our Goderich salt mine, we will update our estimates if necessary as new production data become available.

The Form 10-K also stated:

> We continue to invest in our continuous mining project at our Goderich mine.  We shifted all of our Goderich mine production to continuous mining in the fourth quarter of 2017, and we expect this project to generate annual cost savings of approximately $15 million in 2018 and $30 million in 2019 if all efficiencies are realized.

21.     On May 1, 2018, after the market closed, Compass Minerals filed with the SEC a Form 8-K announcing its financial results for the first quarter of fiscal 2018.  On the following day, May 2, 2018, the Company held an earnings call for analysts and investors to discuss the first quarter results.  On the earnings call, defendant Malecha blamed the Company's earnings shortfall on a "ceiling fall" incident at Goderich rather than additional costs associated with the CMCH upgrade:

> The second primary factor, which depressed earnings this quarter was related to the short-term costs primarily associated with the eiling fall at Goderich mine last year.  We recognized about $20 million of additional costs related to this incident, which we previously outlined during our fourth quarter earnings call.  These costs include increased unit costs as a result of lower production levels at the Goderich mine as well as the logistics cost of using salt from our Cote Blanche mine to serve customers in the Great Lakes.

22.     Also on May 2, 2018, Compass Minerals filed with the SEC a Form 10-Q for the first quarter of fiscal 2018.  In the Form 10-Q, the Company attributed the decrease in Salt operating earnings to various costs overruns, unrelated to the CMCH transition:

Salt operating earnings decreased 25%, or $11.3 million, due to higher per-unit product and logistics costs as well as higher-cost inventory produced in 2017 and sold in the first quarter of 2018. The higher per-unit product and logistics costs resulted from lower production at our Goderich mine due to a ceiling fall that occurred last year, leading to deliveries of salt from our Cote Blanche, Louisiana mine to our Northern markets.

23.    On August 6, 2018, after the market closed, Compass Minerals filed with the SEC a Form 8-K announcing its financial results for the second quarter of fiscal 2018. On the following day, August 7, 2018, the Company held an earnings call for analysts and investors to discuss the second quarter results. On the earnings call, defendant Malecha stated:

The second important takeaway is that we believe we have all the pieces in place to drive more efficiency through our salt operations, and particularly, at our Goderich mine. ***Our continuous mining and continuous haulage systems at the mine are ramping up and served as well during the work stoppage. As we have previously reported, we estimate that this investment has already delivered approximately $5 million in ongoing annualized cost savings.***

\*        \*        \*

I think we expect to ramp-up coming out of this work stoppage to kind of a monthly rate that would drive our production up to – ***we've always kind of talked about the 7 million ton range at Goderich. And we expect to be able to operate at that level with the equipment***, with the employees there going forward as we ramp-up and come out of the strike.

24.    Also on August 7, 2018, Compass Minerals filed with the SEC a Form 10-Q for the second quarter of fiscal 2018. The Company attributed the decrease in Salt operating earnings to various costs overruns, unrelated to the CMCH transition:

Salt operating earnings decreased 17%, or $9.5 million, due to higher per-unit product and logistics costs in North America as well as higher-cost inventory produced in 2017 and sold in 2018. The higher per-unit product and logistics costs resulted primarily from lower Goderich mine production levels and higher carryover inventory costs due to the Goderich mine ceiling fall in the second half of 2017.

25.    Following the release of the second quarter 2018 results, the price of Compass Minerals stock declined by 4.3%.

26.     On September 12, 2018, defendants Standen and Sepich spoke at the Credit Suisse Basic Materials Conference.  Defendant Sepich presented a slide showing the ramp-up of production at Goodrich and stated:  "As you can see on this chart, we're about 75% of the way to our targeted rates."  This indicated that the Goderich mine was currently producing about 450,000 tons of salt per month.

27.     Defendants' representations about the Goderich mine, including the purported cost savings and expected production outputs associated with the CMCH equipment upgrades, were each false and misleading when made or omitted information necessary to make the statements not misleading.  The true facts, which were then known to or recklessly disregarded by defendants, included:

(a)     Goderich's new CMCH mining system resulted in the Company incurring additional operating costs rather than cost savings.  Cost overages were blamed on one-off items, such as a mine ceiling collapse incident, to hide operating costs associated with the CMCH upgrade;

(b)     Goderich's new CMCH mining system was unable to produce targeted levels of salt during this period.  The Company's salt production consistently fell below internal expectations and was less than one-half of the salt it needed to produce to generate the anticipated cost savings;

(c)     the purported annual salt production capacity for Goderich of eight million tons was significantly overstated.  Although Goderich had been able to produce nearly eight million tons of salt annually using drill-and-blast mining, Goderich was discontinuing that method of producing salt, and the CMCH system was not capable of mining that level of salt during this period;

(d)      the purported anticipated annual cost savings attributed to the new CMCH mining system were significantly overstated.  Even at targeted production levels, Goderich's CMCH mining system was expected to generate significantly less than the $30 million in annual cost savings the Company had represented to investors;

(e)      the purported realized cost savings attributed to the new CMCH mining system were significantly overstated.  Cost savings generated by other unrelated projects at Goderich were attributed to the CMCH upgrade; and

(f)      as a result of (a)-(e) above, defendants' statements about Compass Minerals's Salt segment business condition and prospects were materially false and misleading when made.

28.      On October 23, 2018, Compass Minerals filed with the SEC a Form 8-K to pre-announce disappointing third quarter 2018 financial results and lower its outlook for the remainder of the year.  Specifically, the Company disclosed that "production rates at its Goderich, Ontario, salt mine were lower-than-expected for the third quarter of 2018."  The release continued:

> "We are disappointed with our salt segment earnings, which were pressured this quarter by lower-than-expected production at our Goderich mine.  Our employees are making improvements each month to ramp up production with our new continuous mining systems; however, the pace of improvement continues to be slower than expected since the end of the strike.  Our new guidance reflects this slower ramp-up for the remainder of the year . . . ."

29.      Following this announcement, the price of Compass Minerals stock declined by more than 30% over the following two days.

30.      On November 19, 2018, the Company announced the abrupt termination of its CEO, defendant Malecha.  An analyst at BMO Capital Markets reported:  "We believe this change speaks to the severity of the issues at Goderich . . . ."  Following this announcement, the price of Compass Minerals stock declined by 8% over the following three days.

31.     Although defendants blamed the disappointing Salt segment results on lower production rates, unbeknownst to investors, the true cause of the miss was caused by defendants' concealment of and misrepresentations concerning the true costs associated with the CMCH upgrade, the CMCH system's ability to produce salt targets, and the Company's annual salt production capacity.  The fact that defendants knew or recklessly disregarded that their Class Period statements were false was not known until September 23, 2022, when the SEC issued a cease and desist order that revealed defendants' Class Period misconduct.

## LOSS CAUSATION/ECONOMIC LOSS

32.     During the Class Period, as detailed herein, defendants made false and misleading statements and/or engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Compass Minerals stock and operated as a fraud or deceit on Class Period purchasers of Compass Minerals stock.  As defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of Compass Minerals stock fell precipitously, as the prior artificial inflation came out of the price.  As a result of their purchases of Compass Minerals stock during the Class Period, plaintiff and other members of the Class (as defined below) suffered economic loss, *i.e.*, damages, under the federal securities laws.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of Compass Minerals common stock during the Class Period who were damaged thereby (the "Class").  Excluded from the Class are defendants and their immediate families, the officers and directors of the Company, at all relevant times, and members of their immediate families, the legal representatives, heirs, successors, or assigns of any of the foregoing, and any entity in which defendants have or had a controlling interest.

34.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Compass Minerals stock was actively traded on the NYSE.  While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of shares of Compass Minerals common stock were traded publicly during the Class Period on the NYSE.  Record owners and other members of the Class may be identified from records maintained by Compass Minerals or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

35.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law as complained of herein.

36.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in Class and securities litigation.

37.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Compass Minerals; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## APPLICABILITY OF FRAUD-ON-THE-MARKET PRESUMPTION

39.     The market for Compass Minerals stock was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Compass Minerals stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased the Company's stock relying upon the integrity of the market price of Compass Minerals stock and market information relating to Compass Minerals, and have been damaged thereby.

40.     During the Class Period, the artificial inflation in the price of Compass Minerals stock was caused by the material misrepresentations and/or omissions particularized in this complaint, which caused the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false and/or misleading statements about Compass Minerals's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Compass Minerals and its business, operations, and prospects, thus causing the price of the Company's stock to be artificially inflated at all relevant times, and, when the truth was disclosed, the value of the Company's stock was negatively affected.  Defendants' materially false and/or misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing Compass Minerals stock at artificially inflated prices, and each of them has been damaged as a result.

41.     At all relevant times, the market for Compass Minerals stock was an efficient market for the following reasons, among others:

(a)     Compass Minerals stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Compass Minerals filed periodic public reports with the SEC and/or the NYSE;

(c)     Compass Minerals regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases on national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Compass Minerals was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

42.     As a result of the foregoing, the market for Compass Minerals stock promptly digested current information regarding Compass Minerals from all publicly available sources and reflected such information in Compass Minerals's stock price.  Under these circumstances, all purchasers of Compass Minerals stock during the Class Period suffered similar injury through their purchase of Compass Minerals stock at artificially inflated prices and a presumption of reliance applies.

43.     A class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated  Ute Citizens v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on defendants' material misstatements and/or

omissions. Because this action involves defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects – information that defendants were obligated to disclose – positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the material misstatements and omissions set forth above, that requirement is satisfied here.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

44.     Plaintiff incorporates herein each and every allegation contained above.

45.     During the Class Period, defendants engaged in a scheme and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase Compass Minerals stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, defendants, and each of them, took the actions set forth herein.

46.     Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's stock in an effort to maintain artificially high market prices for Compass Minerals stock in violation of §10(b) of the 1934 Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.     Defendants, individually and together, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Compass Minerals's financial well-being and prospects, as specified herein.

48.     Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Compass Minerals's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material fact and/or omitting to state material facts necessary in order to make the statements made about Compass Minerals and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's stock during the Class Period.

49.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of the Individual Defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development, and reporting of the Company's internal budgets, plans, projections, and/or reports; (iii) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these

defendants was aware of the Company's dissemination of information to the investing public, which they knew and/or deliberately disregarded was materially false and misleading.

50.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Compass Minerals's financial well-being and prospects from the investing public and supporting the artificially inflated price of its stock.  As demonstrated by defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Compass Minerals stock was artificially inflated during the Class Period.  In ignorance of the fact that the market price of  the Company's stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the markets in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by defendants, but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Compass Minerals stock during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and/or omissions, plaintiff and other members of the Class were ignorant of their falsity and believed them to be true.  Had plaintiff and

the other members of the Class and the marketplace known the truth regarding the problems that Compass Minerals was experiencing, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased their Compass Minerals stock, or, if they had purchased such stock during the Class Period, they would not have done so at the artificially inflated prices they paid.

53.     By virtue of the foregoing, defendants violated §10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934 Act
### Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Compass Minerals within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements

alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to  prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.     As set forth above, Compass Minerals and Individual Defendants each violated §10(b) and Rule 10b-5 by their acts and omissions as alleged in this complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff, and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  October 21, 2022

STUEVE SIEGEL HANSON LLP


s/ Norman E. Siegel
_____

Norman E. Siegel, D. Kan. #70354
460 Nichols Road, Suite 200
Kansas City, MO  64112
Telephone:  816/714-7100
816/714-7101 (fax)
siegel@stuevesiegel.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
Darryl J. Alvarado
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com

Attorneys for Plaintiff