UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | |
|---|---|
| LOCAL 295 IBT EMPLOYER GROUP WELFARE FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| COMPASS MINERALS INTERNATIONAL, INC., et al., | ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 2:22-cv-02432-EFM-ADM

<u>CLASS ACTION</u>

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF CLASS ACTION
<u>SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................1

II.    THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULES 23(a) AND 23(b)(3) ...............................................................................................................3

III.   PLAINTIFFS HAVE PROVIDED SUFFICIENT NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS ...................................................3

IV.   FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED ..................................5

    A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class...................6

    B.    The Proposed Settlement Was Negotiated at Arm's Length and with an Experienced Mediator ........................................................................................7

    C.    The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal ...............................................................................................8

        1.    Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt.........................................................................................9

        2.    Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation ...............................10

    D.    The Proposed Method for Allocating Relief Is Effective ......................................12

    E.    The Requested Attorneys' Fees and Expenses are Reasonable ...........................12

    F.    The Parties Have Entered Into a Standard Agreement Regarding Opt Outs .........13

    G.    Class Members Are Treated Equitably .................................................................13

    H.    The Parties Believe the Settlement Is Fair and Reasonable..................................13

V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE ..............14

VI.   CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashley v. Reg'l Transp. Dist.*,
2008 WL 384579 (D. Colo. Feb. 11, 2008)............................................................................8

*Bilinsky v. Gatos Silver, Inc.*,
2024 WL 4494290 (D. Colo. Oct. 15, 2024) ........................................................................11

*Chavez Rodriguez v. Hermes Landscaping, Inc.*,
2020 WL 3288059 (D. Kan. June 18, 2020)................................................................6, 7, 11

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................................13

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974).................................................................................................................4

*Fager v. CenturyLink Commc'ns, LLC*,
854 F.3d 1167 (10th Cir. 2016) ..............................................................................................5

*In re Crocs, Inc. Sec. Litig.*,
2014 WL 4670886 (D. Colo. Sept. 18, 2014).........................................................................9

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ...........................................................................11, 12, 14, 15

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................................5

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. Aug. 10, 1976)..........................................................................12

*In re Molycorp, Inc. Sec. Litig.*,
2017 WL 4333997 (D. Colo. Feb. 15, 2017)..........................................................................7

*In re Motor Fuel Temperature Sales Pracs. Litig.*,
271 F.R.D. 221 (D. Kan. 2010)...............................................................................................6

*In re: Motor Fuel Temperature Sales Pracs. Litig.*,
872 F.3d 1094 (10th Cir. 2017) ..............................................................................................5

*In re S. Co. S'holder Derivative Litig.*,
2022 WL 4545614 (N.D. Ga. June 9, 2022)...........................................................................8

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
997 F.3d 1077 (10th Cir. 2021) ..............................................................................................5

Page

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2019 WL 3001084 (S.D.N.Y. July 10, 2019) ........................................................10

*In re Sprint Corp. ERISA Litig.*,
    443 F. Supp. 2d 1249 (D. Kan. 2006) ..................................................................10

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    912 F. Supp. 2d 1178 (D.N.M. 2012) ....................................................................3

*Lucas v. Kmart Corp.*,
    234 F.R.D. 688 (D. Colo. 2006) .....................................................................11, 14

*Marcus v. Kan. Dep't of Revenue*,
    206 F.R.D. 509 (D. Kan. 2002)..............................................................................7

*Marcys v. Kan. Dep't of Revenue*,
    209 F. Supp. 2d 1179 (D. Kan. 2002)..................................................................13

*McNeely v. Nat'l Mobile Health Care, LLC*,
    2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ....................................................9

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
    2021 WL 3021461 (D. Colo. July 16, 2021) ..........................................................7

*Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs., Inc.*,
    2024 WL 98387 (D. Colo. Jan. 1, 2024)......................................................7, 13, 14

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
    2021 WL 1387110 (D. Colo. Apr. 13, 2021)..........................................................4

*Wayne Cnty. Emps.' Ret. Sys. v. Mavenir, Inc.*,
    2019 WL 3494734 (D. Del. Aug. 1, 2019) ..............................................................7

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ..........................................................................5, 6

*Sears v. Atchison, Topeka & Santa Fe Ry., Co.*,
    749 F.2d 1451 (10th Cir. 1984) ..............................................................................5

*Tennille v. W. Union Co.*,
    785 F.3d 422 (10th Cir. 2015) .............................................................................4, 9

*Trujillo v. State of Colo.*,
    649 F.2d 823 (10th Cir. 1981) ................................................................................5

Page

*Voulgaris v. Array Biopharma Inc.*,
  2021 WL 6331178 (D. Colo. Dec. 3, 2021),
  *aff'd*, 60 F.4th 1259 (10th Cir. 2023)................................................................7, 9, 11

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
  Rule 23.........................................................................................................................4
  Rule 23(a)....................................................................................................................3
  Rule 23(a)(4)...........................................................................................................6, 7
  Rule 23(b)(3)...............................................................................................................3
  Rule 23(c)(2)(B)..........................................................................................................4
  Rule 23(e)....................................................................................................................1
  Rule 23(e)(1)(B)..........................................................................................................3
  Rule 23(e)(2)........................................................................................................5, 6, 8
  Rule 23(e)(2)(C)(i)......................................................................................................8
  Rule 23(e)(1)...............................................................................................................3
  Rule 23(e)(2)(B)..........................................................................................................7
  Rule 23(e)(2)(C)(ii)...................................................................................................12
  Rule 23(e)(2)(C)(iii)..................................................................................................12
  Rule 23(e)(2)(C)(iv)..................................................................................................13
  Rule 23(e)(2)(D)........................................................................................................13

**SECONDARY AUTHORITIES**

E. Flores & S. Starykh,
  *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
  (NERA Jan. 22, 2025)..................................................................................................1

Pursuant to this Court's Order Preliminarily Approving Settlement and Providing for Notice (ECF 137) ("Preliminary Approval Order" or "PAO") and Rule 23(e) of the Federal Rules of Civil Procedure, lead plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund ("Local 338") and additional plaintiff Local 295 IBT Employer Group Welfare Fund ("Local 295" and, collectively with Local 338, "Plaintiffs"), on behalf of themselves and the Class, respectfully submit this memorandum of law in support of their motion for: (i) final approval of the class action settlement (the "Settlement") between Defendants[1] and Plaintiffs (collectively, the "Parties"); and (ii) approval of the Plan of Allocation.

## I.    INTRODUCTION

Plaintiffs have resolved all claims against Defendants and secured $48,000,000 in a non-reversionary, all-cash payment for the benefit of the Class.[2]  This is a significant and highly beneficial result.  The Settlement, reached after extensive litigation and arm's length negotiation with an experienced mediator, represents an approximately 14% to 21% recovery of overall class-wide potentially recoverable damages, additionally eclipses the $14 million median settlement amount for securities cases settled in 2024,[3] and is ***four times*** greater than the amount the SEC

---

[1]    The Defendants are: Compass Minerals International, Inc. ("Compass"), Francis J. Malecha ("Malecha"), Anthony J. Sepich ("Sepich"), and James D. Standen ("Standen").  All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Stipulation of Settlement (ECF 135-1) (the "Stipulation").  All references to "Joint Decl." are to the Joint Declaration of Darryl J. Alvarado and Andrew M. McNeela in Support of Motions for Final Approval of Class Action Settlement, Approval of Plan of Allocation, an Award of Attorneys' Fees and Expenses, and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4), filed contemporaneously herewith.  All references to "Fee Memorandum" are to the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4), filed contemporaneously herewith.  Unless otherwise noted, internal citations are omitted and emphasis is added.

[2]    Subject to certain exclusions, the "Class" is defined as all Persons who purchased or otherwise acquired Compass common stock between October 31, 2017, and November 18, 2018, inclusive (the "Class Period"), and were allegedly damaged thereby.  PAO, ¶2.

[3]    E. Flores & S. Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 23, Figure 22 (NERA Jan. 22, 2025) ("NERA Report"), available at: https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf

obtained from Compass to resolve non-fraud based claims.[4]  Consequently, Plaintiffs request final approval of the Settlement so that this litigation can be brought to a close once and for all and that Plaintiffs and other Class Members can receive their share of the recovery without any further delay.

As set forth herein and in the Joint Declaration filed concurrently herewith, Plaintiffs achieved this Settlement only after conducting a thorough investigation of the facts and circumstances underlying their claims, including an extensive analysis of over 600,000 pages of documents produced by Defendants and over 120,000 pages of documents produced by third parties, as well as numerous fact and expert depositions.  Joint Decl., §II.  Plaintiffs also briefed numerous motions, including a motion to dismiss, motion for interlocutory appeal, and motion for class certification.  *Id.*  Given the relative strengths and weaknesses of the claims asserted in this Action and the meaningful recovery of cash obtained for the Class, Plaintiffs believe the Settlement is a favorable result and fully endorse the requested approval.

The Settlement satisfies each of the factors considered in the Tenth Circuit in deciding whether a settlement is fair, reasonable, and adequate.  The Parties negotiated at arm's length with the assistance of a highly-experienced mediator, David M. Murphy, Esq., of Phillips ADR.  Joint Decl., ¶¶49-50.  Further, as mentioned above, the Settlement provides an immediate recovery to the Class while eliminating all risks associated with further prosecution of this Action; thus, the prospect of a larger recovery at some point down the road is easily outweighed by the benefits received under the terms of the proposed Settlement.  Plaintiffs also provided notice of the Settlement to potential Class Members through email and direct mail as well as publishing in *The Wall Street Journal* and over a national newswire service.  *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶5-12,

---

[4]    *See* Sept. 23, 2022 SEC Order, available at: https://www.sec.gov/files/litigation/admin/2022/33-11107.pdf ("Consent Order").

attached as Exhibit 3 to the Joint Decl.  The Notice clearly described the terms of the Settlement and how Settlement proceeds will be allocated among Authorized Claimants.  Notably, Plaintiffs did not receive ***any*** objections in response to the Notice, which weighs strongly in favor of granting final approval of the Settlement in its entirety.  In short, the Settlement and Plan of Allocation are fair, reasonable, and adequate, and in the best interest of the Class.  Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement as set forth in the Stipulation and approve the proposed Plan of Allocation as fair and reasonable.

## II.   THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULES 23(a) AND 23(b)(3)

The "'Tenth Circuit has endorsed class actions as an appropriate means to resolve claims under the federal securities laws'" and allows class actions to be certified for purposes of effectuating a settlement.  *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1233 (D.N.M. 2012) (certifying settlement class).  As part of the Settlement, the Parties stipulated to the certification of the Class, including to the appointment of Plaintiffs as Class Representatives and Lead Counsel as Class Counsel.  *See* Stipulation, ¶3.1.  This Court conditionally certified the Class in the Preliminary Approval Order.  *See* PAO, ¶¶2-4.  Nothing has occurred in the interim period to change the propriety of certifying the Class pursuant to Rules 23(a) and 23(b)(3), and to avoid repetition, Plaintiffs respectfully refer the Court to pages 17-23 of their Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 136) ("Preliminary Approval Memorandum"), adopted herein, for a full discussion of how each class certification requirement is satisfied.

## III.   PLAINTIFFS HAVE PROVIDED SUFFICIENT NOTICE TO THE CLASS IN COMPLIANCE WITH RULE 23 AND DUE PROCESS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P.

23(e)(1)(B).  Rule 23(c)(2)(B) also provides that notice of a class settlement must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (class notice designed to fulfill due process requirements).  Notice "'must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Tennille v. W. Union Co.*, 785 F.3d 422, 436 (10th Cir. 2015).

As explained in Plaintiffs' Preliminary Approval Memorandum (ECF 136, §VI), the notices satisfy these standards and amply inform Class Members of all relevant Settlement-related information.  For these reasons, the Court's Preliminary Approval Order found that the notices "meet the requirements of Federal Rule of Civil Procedure 23, the Private Securities Litigation Reform Act of 1995, and due process, and is the best notice practicable under the circumstances . . . ."  *See* PAO, ¶7.

The combination of: (i) individual emails or First-Class Mail of more than 31,500 copies of the Postcard Notice to potential Class Members who could be identified with reasonable effort and known record holders, supplemented by mailed notice to brokers and nominees; and (ii) publication of the Summary Notice in a relevant, widely-circulated publication, transmission on a newswire, and through a settlement website, has proven highly successful and is typical of notice plans approved in securities class action settlements.  *See, e.g.*, *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *2 (D. Colo. Apr. 13, 2021) (approving a substantially similar proposed notice and method for mailing, distributing, and publishing the notice).  In other words, it was "the best notice . . . practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

"A district court may approve a proposed settlement only after 'finding that it is fair, reasonable, and adequate.'" *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016); Fed. R. Civ. P. 23(e)(2).  Class action settlements are strongly favored.  *See Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1455 (10th Cir. 1984); *Trujillo v. State of Colo.*, 649 F.2d 823, 826 (10th Cir. 1981) ("important public policy concerns . . . support voluntary settlements"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) ("federal courts favor settlement, especially in complex and large-scale disputes").

To evaluate the fairness of a proposed class action settlement, courts consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1087 (10th Cir. 2021).  Courts within the Tenth Circuit also consider the *Rutter* factors in evaluating whether a proposed settlement is fair, reasonable, and adequate.  *See In re: Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1116-17 (10th Cir. 2017).  These are:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Because the Tenth Circuit's *Rutter* factors "largely overlap" with the Rule 23(e)(2) factors, however, "with only the fourth factor not being subsumed," courts in this district now "consider[] the

Rule 23(e)(2) factors as the main tool in evaluating the propriety of [a] settlement," while still addressing the *Rutter* factors. *Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). The Court preliminarily determined that the Settlement meets these standards. PAO, ¶¶1, 5. As discussed below, the Court's initial disposition was correct, as the Settlement satisfies each Rule 23(e)(2) and *Rutter* factor.

### A.    Plaintiffs and Lead Counsel Have Adequately Represented the Class

Adequacy of representation exists when the plaintiffs' "interests do not conflict with those of [the] class members" and the plaintiffs and their counsel "prosecute the action vigorously." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 271 F.R.D. 221, 231 (D. Kan. 2010); *see also Chavez Rodriguez*, 2020 WL 3288059, at *2 ("Courts have analyzed the adequacy of representation by evaluating adequacy under Rule 23(a)(4)."). Here, there is an alignment of interests because Plaintiffs suffered the same alleged injury derived from the same operative facts as other Class Members. Moreover, there are no conflicting interests among Plaintiffs and the Class that bar Plaintiffs' representation of the Class. Both have a strong interest in obtaining the maximum recovery for the harm caused by Defendants' alleged misconduct.

Lead Counsel's vigorous prosecution of this Action also supports a finding of adequacy. Prior to settling, Lead Counsel, *inter alia*: (i) investigated the relevant factual events; (ii) drafted both the initial complaint and the Amended Complaint; (iii) successfully opposed Defendants' motion to dismiss and to strike; (iv) successfully opposed Defendants' motion to certify order for interlocutory appeal and stay case; (v) reviewed and analyzed hundreds of thousands of pages of documents produced in discovery; (vi) took six fact depositions, and took and defended the depositions of the Parties' respective class certification experts; (vii) moved for class certification; and (viii) prepared for and participated in a mediation session. *See* Joint Decl., ¶¶16-50. Lead Counsel's efforts were instrumental in achieving this substantial recovery for the Class.

Courts also assess the adequacy of representation by evaluating the competence and skill of plaintiffs' counsel. *See Chavez Rodriguez*, 2020 WL 3288059, at *2 (Rule 23(a)(4) analysis includes examination of the adequacy of representation); *Marcus v. Kan. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) (Rule 23(a)(4) requires class counsel that are "'qualified, experienced, and generally able to conduct the proposed litigation'"). Lead Counsel have led the prosecution of this Action from its inception, conducted extensive discovery, and negotiated the proposed Settlement. Moreover, Lead Counsel have significant experience prosecuting complex securities class actions.[5] Lead Counsel's ability to advance this challenging Action and obtain this Settlement provides ample evidence of their adequacy to serve as Lead Counsel.

## B.    The Proposed Settlement Was Negotiated at Arm's Length and with an Experienced Mediator

The second factor under Rule 23(e)(2)(B) overlaps with the first factor considered by the Tenth Circuit, which assesses whether "the . . . settlement was fairly and honestly negotiated." *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs., Inc.*, 2024 WL 98387, at *2 (D. Colo. Jan. 1, 2024). "Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved." *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 4333997, at *4 (D. Colo. Feb. 15, 2017); *see also Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *6 (D. Colo. Dec. 3, 2021) (use of an active and independent mediator "provide[s] strong support for approval of" a settlement), *aff'd*, 60 F.4th 1259 (10th Cir. 2023). Additionally, "[t]he fairness of the negotiating process is to be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and

---

[5]    *See, e.g.*, *Wayne Cnty. Emps.' Ret. Sys. v. Mavenir, Inc.*, 2019 WL 3494734, at *5 (D. Del. Aug. 1, 2019) ("Kirby McInerney . . . [has] significant experience with securities litigation and class actions, having litigated many such cases in federal courts throughout the country."); *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2021 WL 3021461, at *3 (D. Colo. July 16, 2021) ("Robbins Geller has successfully prosecuted numerous securities fraud class actions and has the requisite knowledge of the applicable law to vigorously pursue the class's claims.").

[any] coercion or collusion that may have marred the negotiations themselves.'" *Ashley v. Reg'l Transp. Dist.*, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008).

The Settlement was achieved as a result of extensive, arm's-length negotiations assisted and supervised by David M. Murphy, Esq., of Phillips ADR, a highly respected third-party mediator experienced in complex litigation. *See, e.g.*, *In re S. Co. S'holder Derivative Litig.*, 2022 WL 4545614, at *10 (N.D. Ga. June 9, 2022) (Mr. Murphy's facilitation as mediator in complex securities litigation supports reasonableness of settlement.). A lengthy in-person mediation session involved thorough discussions regarding the Parties' respective claims and defenses as well as their strengths and weaknesses. The Parties were unable to reach a compromise at the mediation, but continued negotiating over the next several months until the mediator issued a settlement recommendation based on his analysis of the Action, which both sides accepted. *See* Joint Decl., ¶¶49-50.

Moreover, Lead Counsel engaged in an extensive prosecution of this Action. *See* §II.A.1, *supra*. That same thoroughness continued into settlement negotiations. Using their significant experience litigating complex securities class action cases, Lead Counsel engaged a well-regarded expert and consultants who analyzed the market and determined the appropriate methodologies for estimating damages in this Action. Armed with this information and the results of their investigation, Lead Counsel were well informed and prepared to negotiate the Settlement.

C.    **The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal**

The third factor considered under Rule 23(e)(2) instructs courts to consider the adequacy of the settlement relief in light of "the costs, risks, and delay of trial and appeal." *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps with the combined second and third factors considered by the Tenth Circuit – whether "'serious legal and factual questions placed the litigation's outcome in doubt'" and whether "'the immediate recovery was more valuable than the mere possibility of a

more favorable outcome after further litigation.'" *Tennille*, 785 F.3d at 434; *see also Array Biopharma*, 2021 WL 6331178, at *7-*8. Courts recognize that the class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).

### 1.    Serious Legal and Factual Questions Placed the Litigation's Outcome in Doubt

While Plaintiffs are confident that their claims are meritorious and supported by the evidence, there nonetheless were serious questions of law and fact that made litigating risky. Such risks "tip[] the balance in favor of settlement." *Id.* Courts within this Circuit and nationwide recognize that securities class actions are notoriously complex and present numerous hurdles at all stages of litigation. *See, e.g.*, *Array Biopharma*, 2021 WL 6331178, at *7 (noting that "[l]itigating an action under the PSLRA is not a simple undertaking'") (alteration in original); *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014) (same). This case is no exception.

Given the risks and challenges inherent in litigating this Action, Plaintiffs and Lead Counsel believe that the proposed Settlement is in the best interests of the Class. Although the Court largely denied Defendants' motion to dismiss, "that ruling provides no guarantee that [Plaintiffs] will ultimately prevail on the merits." *McNeely*, 2008 WL 4816510, at *13. Plaintiffs faced significant risks in establishing loss causation and damages. With respect to the final alleged corrective disclosure – a November 19, 2018 press release announcing the abrupt departure of the Company's former CEO, Malecha – Defendants would have argued it was not sufficiently "corrective" and was not followed by a statistically significant stock price decline. And Defendants would no doubt argue that Plaintiffs are required to disaggregate any losses unrelated to Plaintiffs' claims. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019) ("plaintiff[s] ultimately will need to disaggregate confounding factors to prove economic loss").

- 9 -

Moreover, absent a settlement, Defendants would undoubtedly file dispositive motions, including motions for summary judgment and *Daubert* motions. If Plaintiffs' claims survived those motions, trial would be lengthy, complicated, and risky. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006) ("[E]ven if plaintiffs could have survived defendants' motions for summary judgment, additional serious questions of law and fact also would have placed in doubt the value of the recovery plaintiffs might have been able to obtain."). And assuming Plaintiffs prevailed at trial on all of their claims, costly, time-consuming appeals would almost certainly follow. Significantly, even if Plaintiffs successfully litigated this Action through jury verdict and subsequent appeals, those costly and protracted proceedings would have substantially drained Compass's insurance policies. Accordingly, there was substantial risk of obtaining no recovery from Defendants, regardless of a successful outcome at trial.

Considering the complex legal and factual issues associated with continued litigation, as well as the limited available sources of recovery, there is an undeniable and substantial risk that, after years of continued litigation and additional delays, the Class could have received an amount significantly less than the Settlement Amount, or nothing at all.

### 2.    Immediate Recovery Is More Valuable than the Mere Possibility of a More Favorable Outcome After Further Litigation

The complexity, uncertainty, expense, and likely duration of further litigation and appeals also supports approval of the proposed Settlement. "[I]n assessing a settlement, courts weigh the recovery 'against the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation.'" *Array Biopharma*, 2021 WL 6331178, at *8.

This Action is over two and a half years old, and Plaintiffs and Lead Counsel have already expended significant time and resources. Those costs would only increase as the case proceeded to

trial, with the inevitable appeals likely extending the Action for years. *See Chavez Rodriguez*, 2020 WL 3288059, at *3 (observing that "the costs and time of moving forward in litigation would be substantial"); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 694 (D. Colo. 2006) ("If this case were to be litigated, in all probability it would be many years before it was resolved.").

The $48,000,000 Settlement represents approximately 14% to 21% of the estimated maximum recoverable damages in this Action depending on the method of calculating damages. Courts routinely approve class action settlements recovering lower percentages of estimated damages. *See, e.g.*, *Bilinsky v. Gatos Silver, Inc.*, 2024 WL 4494290, at *5 (D. Colo. Oct. 15, 2024) ("[E]ven a 9.4% recovery exceeds the median recovery in cases alleging violations of the Securities Exchange Act."); *Array Biopharma*, 2021 WL 6331178, at *6 ("[I]n the Tenth Circuit between 2010 and 2019 . . . the median settlement as a percentage of overall damages was 7.6% for similar cases."); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (noting recovery of approximately 1.3% of amount of damages "is in line with the median ratio of settlement size to investor losses"). The proposed Settlement also eclipses the $14 million median settlement amount for securities cases settled in 2024[6] and is ***four times*** greater than what the SEC obtained for resolving non-fraud based claims.[7]

The substantial risk that, after years of additional litigation, Plaintiffs could recover significantly less than $48,000,000, provides ample support for final approval. *See Crocs*, 306 F.R.D. at 691 ("[I]mmediate recovery . . . outweighs the time and costs inherent in complex securities litigation, especially when the prospect is some recovery versus no recovery."); *In re King*

---

[6]   NERA Report, *supra*, n.3, at 23, Fig. 22.

[7]   *See* Consent Order at 10. Notably, the Consent Order expressly contemplates Class Members in civil litigation claiming in both the SEC Fair Funds ***and*** any potential civil recovery. *Id.* at 10-11. As such, the total recovery available to Class Members is $60 million.

*Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. Aug. 10, 1976) ("In this respect, '[i]t has been held proper "to take the bird in the hand instead of a prospective flock in the bush."'").

### D.    The Proposed Method for Allocating Relief Is Effective

As described in §V, the proposed Plan of Allocation is "effective" pursuant to Rule 23(e)(2)(C)(ii).  The proposed Plan of Allocation was prepared based on consultation with Plaintiffs' damages expert and is designed to effectively and fairly allocate the Net Settlement Fund to Authorized Claimants.  The Settlement provides a commonly utilized claims process, ensuring that only those Class Members who suffered damages and submit valid and timely claim forms will receive their *pro rata* share of the Net Settlement Fund.

### E.    The Requested Attorneys' Fees and Expenses Are Reasonable

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment" as part of the settlement approval process.  Fed. R. Civ. P. 23(e)(2)(c)(iii).  As discussed in Lead Counsel's separate application, Lead Counsel seek an award of attorneys' fees in the amount of 23.56% of the Settlement Amount, along with payment of Plaintiffs' Counsel's expenses incurred, and interest earned on these amounts at the same rate as earned by the Settlement Fund.  *See* Fee Memorandum, §III.  The requested attorneys' fees are well within the range of fees awarded in this Circuit and ensure that a substantial portion of the Net Settlement Fund is received by the Class.  *Id.* at §III.B.  Plaintiffs' Counsel's expenses were reasonably incurred and necessary for the prosecution of the case.  Finally, this is an all-cash, non-reversionary settlement and the ***entire*** Net Settlement Fund will be distributed to Class Members until it is no longer economically feasible to do so.  As such, there is no risk that Lead Counsel will be paid but Class Members will not.[8]

---

[8]    The Settlement provides that any attorneys' fee award shall be paid to Lead Counsel after the Court executes the Judgment and an order awarding such fees.  *See* Stipulation, ¶6.2.

### F.    The Parties Have Entered Into a Standard Agreement Regarding Opt Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements between the Parties so that the Court may determine the impact (if any) on the relief provided by the Settlement.  As described in the Preliminary Approval Memorandum, the Parties have entered into a standard supplemental agreement which provides that, in the event Class Member exclusions exceed an agreed-upon threshold, Defendants shall have the option to terminate the Settlement.  ECF 136 at 16.  These types of agreements are "standard in securities class action settlements and [therefore] ha[ve] no negative impact on the fairness" of the Settlement.  *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### G.    Class Members Are Treated Equitably

Rule 23(e)(2)(D) considers whether Class Members are treated equitably.  As discussed in §V and reflected in the Plan of Allocation set forth in the Notice, each Class Member that properly submits a valid Proof of Claim will receive their *pro rata* share of the Net Settlement Fund.  *See* Murray Decl., Ex. B (Notice at 4).  This factor therefore weighs in favor of granting final approval of the Settlement.  *See Maxar*, 2024 WL 98387, at *5 (factor supports approval where "[t]he settlement fund will be allocated to authorized claimants on a *pro rata* basis based on the relative size of their recognized claims").

### H.    The Parties Believe the Settlement Is Fair and Reasonable

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight" and is a factor to be considered in granting approval to a class settlement.  *Marcys v. Kan. Dep't of Revenue*, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002).  Plaintiffs and Lead Counsel both strongly endorse the Settlement as fair and reasonable, and believe it is in the best interests of the Class.  *See* Joint Decl., ¶63; Declaration of Earl Mathurin, submitted on behalf of Local 338, attached as Exhibit 1 to the Joint Decl.; Declaration of Linda Kellner, submitted on behalf of Local 295, attached as

- 13 -

Exhibit 2 to the Joint Decl.  Lead Counsel have extensive experience litigating securities class actions and only agreed to settle this litigation after an extensive investigation and data analysis, motion practice, discovery, and rigorous arm's-length negotiations.  Defendants and their counsel likewise concluded that the Settlement reflects a fair resolution of the Action.

## V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

The proposed Plan of Allocation, set forth in the Notice, details how the Net Settlement Fund is to be allocated among Authorized Claimants.  A plan of allocation should be approved where it is "fair, reasonable, and adequate."  *See Kmart*, 234 F.R.D. at 695.  In making this determination, courts give great weight to the recommendation of experienced counsel.  *See id.* ("'An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'").

Here, the Plan of Allocation was formulated in consultation with the Plaintiffs' damages expert and is consistent with Plaintiffs' allegations.  Further, the Plan of Allocation will distribute the Net Settlement Fund on a *pro rata* basis, as determined by the ratio that the Authorized Claimant's Recognized Claim Amounts bears to the total of the Recognized Claim Amounts of all Authorized Claimants.  Calculation of a Recognized Claim Amount will depend upon several factors, including when the securities were purchased, acquired, sold, or held.

Lead Counsel submit that this method of distributing settlement funds is fair, reasonable, and adequate, and warrants this Court's approval.  *See, e.g.*, *Maxar*, 2024 WL 98387, at *5 (approving plan of allocation based on *pro rata* distribution of recognized losses); *Crocs*, 306 F.R.D. at 692 (approving plan of allocation in securities class action settlement where funds will be allocated "*pro rata*" based on similar factors and plaintiffs "consulted with damages experts").  Notably, there have been no objections to the Plan of Allocation to date, which further supports its merit at final

approval. *Id.* at 691 ("The reaction of the class members further supports the conclusion that the Settlement Agreement is fair.").

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) approve the proposed Settlement as fair, reasonable, and adequate; and (ii) approve the Plan of Allocation as fair and reasonable.

DATED:  June 25, 2025                          Respectfully submitted,

STUEVE SIEGEL HANSON LLP
NORMAN E. SIEGEL, D. Kan. #70354


*s/ Norman E. Siegel*
NORMAN E. SIEGEL

460 Nichols Road, Suite 200
Kansas City, MO  64112
Telephone:  816/714-7100
816/714-7101 (fax)
siegel@stuesiegel.com

*Local Counsel*

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
DARRYL J. ALVARADO
HEATHER G. GEIGER
JOSEPH J. TULL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
hgeiger@rgrdlaw.com
jtull@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIN W. BOARDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
eboardman@rgrdlaw.com

KIRBY McINERNEY LLP
ANDREW M. McNEELA
THOMAS W. ELROD
IRA M. PRESS
LAUREN WANDS
250 Park Avenue, Suite 820
New York, NY 10177
Telephone: 212/317-2300
212/751-2540 (fax)
amcneela@kmllp.com
telrod@kmllp.com
ipress@kmllp.com
lwands@kmllp.com

*Lead Counsel for Lead Plaintiff*

FRIEDMAN & ANSPACH
EUGENE FRIEDMAN
DANIEL TREIMAN
1500 Broadway
New York, NY 10036
Telephone: 212/354-4500
efriedman@friedmananspach.com
dtreiman@friedmananspach.com

*Additional Counsel*