UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | |
|---|---|
| LOCAL 295 IBT EMPLOYER GROUP WELFARE FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COMPASS MINERALS INTERNATIONAL, INC., et al.,<br><br>Defendants. | Civil Action No. 2:22-cv-02432-EFM-ADM<br><br><u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................................1

II.  LEAD COUNSEL ARE ENTITLED TO A REASONABLE PERCENTAGE OF
THE COMMON FUND ........................................................................................................3

III.  THE "*JOHNSON* FACTORS" SUPPORT THE REASONABLENESS OF LEAD
COUNSEL'S FEE REQUEST ..............................................................................................4

    A.  The Amount Involved and the Results Obtained ......................................................5

    B.  The Customary Fees in this District...........................................................................6

    C.  The Time and Labor Required ...................................................................................7

        1.  The Amount of Time and Labor Dedicated by Lead Counsel
Justifies the Requested Fee ...........................................................................7

        2.  A Lodestar Cross-Check Supports the Fee Request ......................................7

    D.  The Novelty and Difficulty of the Legal and Factual Questions ..............................9

        1.  Risk in Establishing Liability.........................................................................9

        2.  Risk in Establishing Loss Causation and Damages .......................................9

        3.  Other Risks...................................................................................................10

    E.  The Skill Required and the Experience, Reputation, and Ability of Lead
Counsel ...................................................................................................................11

    F.  The Contingent Nature of the Fee............................................................................11

    G.  The Preclusion of Other Employment by Lead Counsel .........................................12

    H.  The Undesirability of the Action .............................................................................13

IV.  THE REACTION OF THE CLASS TO THE REQUESTED FEE FURTHER
SUPPORTS ITS REASONABLENESS...............................................................................13

V.  LEAD COUNSEL ARE ENTITLED TO AN AWARD OF THEIR
REASONABLE LITIGATION EXPENSES .......................................................................13

VI.  THE REQUESTED PSLRA AWARDS FOR PLAINTIFFS SHOULD BE
APPROVED ........................................................................................................................14

VII.  CONCLUSION...................................................................................................................15

## TABLE OF AUTHORITIES

Page

**CASES**

*Blum v. Stenson*,
   465 U.S. 886 (1984)..............................................................................................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..............................................................................................................3

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla.*,
   8 F.3d 722 (10th Cir. 1993) ...............................................................................................14

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)......................................................................5

*Doyle v. Reata Pharms., Inc.*,
   2024 WL 4579921 (E.D. Tex. Mar. 29, 2024) .....................................................................6

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................................10

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ...............................................................................................3

*In re Advance Auto Parts, Inc. Sec. Litig.*,
   2022 WL 20806294 (D. Del. June 13, 2022)........................................................................7

*In re Bank of Am. Wage & Hour Emp. Litig.*,
   2013 WL 6670602 (D. Kan. Dec. 18, 2013).......................................................................14

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001).............................................................................................5, 10

*In re Charter Commc'ns, Inc.*,
   2005 WL 4045741 (E.D. Mo. June 30, 2005) ......................................................................9

*In re Comverse Tech., Inc., Sec. Litig.*,
   2010 WL 2653354 (E.D.N.Y. June 24, 2010) ......................................................................5

*In re Crocs, Inc. Sec. Litig.*,
   2014 WL 4670886 (D. Colo. Sept. 18, 2014)................................................................ passim

*In re Davita Healthcare Partners, Inc.*,
   2015 WL 3582265 (D. Colo. June 5, 2015).........................................................................15

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
   2021 WL 5369798 (D. Kan. Nov. 17, 2021) ....................................................................3, 6

**Page**

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
2022 WL 2663873 (D. Kan. July 11, 2022) .............................................................2

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................5

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................................5

*In re Miniscribe Corp.*,
309 F.3d 1234 (10th Cir. 2002) ...............................................................................8

*In re Molycorp, Inc. Sec. Litig.*,
2017 WL 11598681 (D. Colo. June 16, 2017)......................................................6, 15

*In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*,
149 P.3d 976 (N.M. Ct. App. 2006)..........................................................................4

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
2006 WL 8429707 (D. Colo. Sept. 29, 2006)...........................................................8

*In re Resideo Techs., Inc. Sec. Litig.*,
2022 WL 872909 (D. Minn. Mar. 24, 2022) ...........................................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019).........................................................10

*In re St. Paul Travelers Sec. Litig.*,
2006 WL 1116118 (D. Minn. Apr. 25, 2006)...........................................................4

*In re Syngenta AG MIR 162 Corn Litig.*,
357 F. Supp. 3d 1094 (D. Kan. 2018)....................................................................3, 6

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986)...........................................................................11

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005).......................................................................4

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974),
*abrogated by Blanchard v. Bergeron*,
489 U.S. 87 (1989)............................................................................................. *passim*

**Page**

*Lucas v. Kmart Corp.*,
  2006 WL 2729260 (D. Colo. July 27, 2006) ...........................................................................13

*Matter of Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .....................................................................................................4

*McNeely v. Nat'l Mobile Health Care, LLC*,
  2008 WL 4816510 (W.D. Okla. Oct. 27, 2008) ........................................................................9

*Millsap v. McDonnell Douglas Corp.*,
  2003 WL 21277124 (N.D. Okla. May 28, 2003)......................................................................13

*Mo. v. Jenkins by Agyei*,
  491 U.S. 274 (1989).................................................................................................................6, 8

*Nakamura v. Wells Fargo Bank, Nat'l Ass'n*,
  2019 WL 2185081 (D. Kan. May 21, 2019)............................................................................3, 6

*Nieberding v. Barrette Outdoor Living, Inc.*,
  129 F. Supp. 3d 1236 (D. Kan. 2015)........................................................................................3

*Or. Laborers Emp. Pen. Tr. Fund v. Maxar Techs. Inc.*,
  2024 WL 98387 (D. Colo. Jan. 1, 2024)..............................................................................5, 13

*Paulson v. McKowen*,
  2023 WL 2528783 (D. Colo. Mar. 15, 2023) ...........................................................................6

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
  2021 WL 1387110 (D. Colo. Apr. 13, 2021)...........................................................................15

*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*,
  2021 WL 2981970 (D. Colo. July 15, 2021) ................................................................. *passim*

*Rep. of the Third Cir. Task Force, Ct. Awarded Att'y Fees*,
  108 F.R.D. 237 (3d Cir. 1985)...................................................................................................4

*Shaw v. Interthinx, Inc.*,
  2015 WL 1867861 (D. Colo. Apr. 22, 2015).............................................................................6

*Tuten v. United Airlines, Inc.*,
  41 F. Supp. 3d 1003 (D. Colo. 2014)........................................................................................12

*Uselton v. Com. Lovelace Motor Freight, Inc.*,
  9 F.3d 849 (10th Cir. 1993) ..................................................................................................3, 5

**Page**

*Vaszlavik v. Storage Corp.*,
  2000 WL 1268824 (D. Colo. Mar. 9, 2000) ....................................................................11, 14

*Voulgaris v. Array Biopharma, Inc.*,
  2021 WL 6331178 (D. Colo. Dec. 3, 2021),
  *aff'd*, 60 F.4th 1259 (10th Cir. 2023)....................................................................................9, 10

*Voulgaris v. Array Biopharma, Inc.*,
  60 F.4th 1259 (10th Cir. 2023) ...............................................................................5, 7, 8, 9

## STATUTES, RULES, AND REGULATIONS

15 U.S.C.
  §78u-4(a)(4) ............................................................................................ *passim*

Federal Rules of Civil Procedure
  Rule 23(h) ....................................................................................................................2

## SECONDARY AUTHORITIES

E. Flores & S. Starykh,
  *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
  (NERA Jan. 22, 2025)..............................................................................................5, 6

The law firms of Kirby McInerney LLP ("Kirby McInerney") and Robbins Geller Rudman & Dowd LLP ("Robbins Geller" and, with Kirby McInerney, "Lead Counsel") respectfully submit this memorandum of law in support of their motion for an award of attorneys' fees, payment of litigation costs and expenses, and awards to lead plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund ("Local 338") and additional plaintiff Local 295 IBT Employer Group Welfare Fund ("Local 295" and, collectively with Local 338, "Plaintiffs") pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.

## I.    INTRODUCTION

Following hard-fought litigation and arm's-length settlement negotiations between Plaintiffs and Defendants,[1] Lead Counsel secured the resolution of this Action and the creation of a $48,000,000 common fund to compensate the Class[2] for the damages caused by Defendants' allegedly false and misleading statements to the market.  This outcome is the direct result of the dedicated and efficient efforts of highly experienced counsel who worked diligently, and without compensation, to represent Class Members in a highly contentious litigation.  Lead Counsel skillfully prosecuted this Action, overcame Defendants' motion to dismiss and related motion for interlocutory appeal, conducted extensive fact and expert discovery, fully briefed Plaintiffs' class certification motion, and negotiated the Settlement.  But for Lead Counsel's willingness to undertake this challenging and risky litigation and to devote substantial resources towards vindicating the Class's interests, the Settlement would not have been possible.

---

[1]    The Defendants are: Compass Minerals International, Inc. ("Compass"), Francis J. Malecha, Anthony J. Sepich, and James D. Standen.  All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Stipulation of Settlement (ECF 135-1) (the "Stipulation").  All references to "Joint Decl." are to the Joint Declaration of Darryl J. Alvarado and Andrew M. McNeela in Support of Motions for Final Approval of Class Action Settlement, Approval of Plan of Allocation, an Award of Attorneys' Fees and Expenses, and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4), filed contemporaneously herewith.  Unless otherwise noted, internal citations are omitted and emphasis is added.

[2]    Subject to certain exclusions, the "Class" is defined as all Persons who purchased or otherwise acquired Compass common stock between October 31, 2017 and November 18, 2018, inclusive (the "Class Period"), and were allegedly damaged thereby.  Order Preliminarily Approving Settlement and Providing for Notice (ECF 137), ¶2.

When Lead Counsel's efforts are viewed together with the Action's risks and the benefits resulting from the Settlement, a suitable attorneys' fee award is warranted. Accordingly, pursuant to the Stipulation and this Court's inherent authority under the common-fund doctrine and Rule 23(h), Lead Counsel respectfully request that the Court award 23.56% of the $48,000,000 Settlement Amount, or $11,308,800, plus interest earned on this amount at the same rate as earned by the Settlement Fund, for payment of attorneys' fees.[3] *See* §III, *infra.*

This request is reasonable under the twelve-factor test established in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2022 WL 2663873, at *4 (D. Kan. July 11, 2022) ("The Tenth Circuit . . . has instructed that a court making a percentage fee award in a common fund case should analyze the fee award's reasonableness under the *Johnson* factors.").

In addition, Lead Counsel request payment of their litigation costs and expenses in the amount of $368,527.48. *See* §V, *infra.* Finally, Lead Counsel request that the Court approve awards pursuant to 15 U.S.C. §78u-4(a)(4) from the common fund to Local 338 and Local 295, in the amount of $10,000 each. *See* §VI, *infra.* These requests are reasonable and fully justified by the work performed by the Plaintiffs on behalf of the Class. *See* Declaration of Earl Mathurin ("Mathurin Decl."), submitted on behalf of Local 338, attached as Exhibit 1 to the Joint Decl.; Declaration of Linda Kellner ("Kellner Decl."), submitted on behalf of Local 295, attached as Exhibit 2 to the Joint Decl.

---

[3]    The fee sought is consistent with Lead Plaintiff Local 338's retention agreement with Kirby McInerney.

## II.    LEAD COUNSEL ARE ENTITLED TO A REASONABLE PERCENTAGE OF THE COMMON FUND

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Nieberding v. Barrette Outdoor Living, Inc.*, 129 F. Supp. 3d 1236, 1248 (D. Kan. 2015) ("In Kansas, an attorney who recovers a common fund in a class action has the right to recover a reasonable fee from the fund as a whole."). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered on the theory "'that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.'" *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (awarding fees based on percentage of settlement fund).

"[T]he more recent trend has been toward utilizing the percentage method in common fund cases." *Id.*; *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 2021 WL 5369798, at *3 (D. Kan. Nov. 17, 2021); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1113-14 (D. Kan. 2018); *Nakamura v. Wells Fargo Bank, Nat'l Ass'n*, 2019 WL 2185081, at *1 (D. Kan. May 21, 2019). The percentage method "is less subjective than the lodestar plus multiplier approach" and is particularly appropriate where, as here, class counsel "was initially retained on a contingent fee basis." *Gottlieb*, 43 F.3d at 484.[4]

"There are strong policy reasons behind the judicial and legislative preference for the percentage of recovery method of determining attorney fees in these cases." *In re Xcel Energy, Inc.*

---

[4]    *See also Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993) (adopting percentage approach "rather than lodestar" in awarding attorneys' fees); *Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 2981970, at *1 (D. Colo. July 15, 2021) ("In common fund cases, the Tenth Circuit has 'recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis.'") (alteration in original).

*Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005); *see also Rep. of the Third Cir. Task Force, Ct. Awarded Att'y Fees*, 108 F.R.D. 237, 254 (3d Cir. 1985). **First**, "[the percentage] methodology rewards efficiency and provides plaintiffs' counsel with a strong incentive to effectuate the maximum possible recovery under the circumstances." *In re St. Paul Travelers Sec. Litig.*, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006); *see also In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*, 149 P.3d 976, 993 (N.M. Ct. App. 2006) ("The percentage method is preferred in some jurisdictions, including the Tenth Circuit, because this method rewards efficient and prompt resolutions of class actions . . . ."). **Second**, the percentage method is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated on a percentage-of-the-recovery method. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). And, **third**, use of the percentage method decreases the burden imposed upon courts by the "lodestar" method and assures that class members do not experience undue delay in receiving their share of the settlement.

## III.   THE "*JOHNSON* FACTORS" SUPPORT THE REASONABLENESS OF LEAD COUNSEL'S FEE REQUEST

Federal courts consider the "*Johnson* factors" – set forth in *Johnson v. Ga. Highway Express, Inc.* – in setting an appropriate fee percentage:

> "(1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee – this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1263 n.1 (10th Cir. 2023). Because "'rarely are all of the *Johnson* factors applicable,'" "a court need not specifically address each *Johnson* factor."

*Or. Laborers Emp. Pen. Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *3 (D. Colo. Jan. 1, 2024); *see also Uselton*, 9 F.3d at 854.

Here, Lead Counsel respectfully request that the Court award 23.56% of the $48,000,000 Settlement Amount, or $11,308,800, plus interest earned on this amount at the same rate as earned by the Settlement Fund, for payment of attorneys' fees. This percentage is the product of a blended contingency rate set forth in Local 338's retainer agreement. "While this Court need not adhere to that agreement, courts apply a presumption of reasonableness where a fee request is consistent with an ex ante agreement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019).[5] That Lead Plaintiff, Local 338, a sophisticated institutional investor, entered into an *ex ante* agreement to pay a blended contingency fee rate supports the reasonableness of Lead Counsel's request. However, the requested fee is reasonable for the additional reasons discussed below.

## A.    The Amount Involved and the Results Obtained

Among the *Johnson* considerations, a critical factor is monetary results achieved. *DaVita*, 2021 WL 2981970, at *2. Here, through their extensive efforts, Lead Counsel obtained a $48,000,000 recovery for the Class. This significant and highly beneficial result represents approximately 14% to 21% of overall class-wide potentially recoverable damages, eclipses the $14 million median settlement amount for securities cases settled in 2024,[6] is four to seven times the median settlement value as a percentage of estimated damages in cases of this size,[7] and is four times

---

[5]    *See also In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) (in PSLRA cases, "courts have found such an agreement between fully informed lead plaintiffs and their counsel to be presumptively reasonable"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) (in PSLRA cases, "courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable"); *In re Comverse Tech., Inc., Sec. Litig.*, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010); *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001).

[6]    E. Flores & S. Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 23, Fig. 22 (NERA Jan. 22, 2025), *available at:* https://www.nera.com/content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf

[7]    *See id.* at 26-27, Figures 23-24.

greater than the amount the SEC obtained from Compass to resolve non-fraud based claims.  In evaluating proposed settlements, courts have found smaller percentage recoveries to be reasonable and supportive of greater percentage fees.  *See, e.g.*, *Paulson v. McKowen*, 2023 WL 2528783, at *7 (D. Colo. Mar. 15, 2023) (awarding net 33-1/3% fee; noting 6.4% recovery was "in line with median settlement values of 7.6%"); *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *4-*5 (D. Colo. Sept. 18, 2014) (awarding 30% fee; settlement of dismissed action represented "'1.3%'" of the amount of achievable damages).

## B.      The Customary Fees in this District

An appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for their services in the open marketplace.  *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989).  In complex cases, such as this one, "a fee award of one-third of the common fund [is] 'well within the range typically awarded in class actions.'" *Nakamura*, 2019 WL 2185081, at *2; *see also Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) ("'customary fee . . . in a common fund settlement is approximately one third of the total economic benefit'").

The requested attorneys' fee of 23.56% is well below fee percentages awarded by district courts in this Circuit in common fund cases.  *See, e.g.*, *In re EpiPen*, 2021 WL 5369798, at *4 (awarding one-third fee); *Syngenta*, 357 F. Supp. 3d at 1113 (same); *Paulson*, 2023 WL 2528783, at *8 (awarding one-third fee); *DaVita*, 2021 WL 2981970, at *4 (awarding 30% fee of $135 million settlement); *In re Molycorp, Inc. Sec. Litig.*, 2017 WL 11598681, at *1 (D. Colo. June 16, 2017) (awarding 30% fee).  The same is true of district courts in other circuits.  *See Doyle v. Reata Pharms., Inc.*, 2024 WL 4579921, at *1 (E.D. Tex. Mar. 29, 2024) (awarding 30% fee of $45 million settlement); *In re Advance Auto Parts, Inc. Sec. Litig.*, 2022 WL 20806294, at *1 (D. Del. June 13,

2022) (awarding 25% fee of $49.25 million settlement); *In re Resideo Techs., Inc. Sec. Litig.*, 2022 WL 872909, at *6-*7, *9 (D. Minn. Mar. 24, 2022) (awarding 25% fee of $55 million settlement).

### C.    The Time and Labor Required

#### 1.    The Amount of Time and Labor Dedicated by Lead Counsel Justifies the Requested Fee

The amount of time and labor Lead Counsel dedicated to the prosecution and settlement of this Action also supports the reasonableness of their fee request.  As detailed in the Joint Declaration, Lead Counsel vigorously prosecuted this Action for over two years.  This Action was settled only after Lead Counsel, *inter alia*: (i) investigated the relevant factual events; (ii) drafted both the initial complaint and the Amended Complaint; (iii) successfully opposed Defendants' motion to dismiss and to strike; (iv) defeated Defendants' motion for interlocutory appeal; (v) engaged in fact discovery by obtaining, reviewing, and analyzing hundreds of thousands of pages of documents produced by Defendants and third parties; (vi) took six fact depositions, and conducted and defended the depositions of the Parties' respective class certification experts; (vii) moved for and fully briefed the motion for class certification; and (viii) prepared for and participated in mediation.  These efforts paved the way for Lead Counsel to obtain a substantial recovery for the Class, and they should now be appropriately compensated for their efforts.[8]  Joint Decl., ¶¶16-51.

#### 2.    A Lodestar Cross-Check Supports the Fee Request

While the Court is "not required to perform a lodestar cross-check," *Array Biopharma*, 60 F.4th at 1265, a cross-check also supports the reasonableness of the requested fee.  The requested fee award ($11,308,800 before interest) is approximately 1.02 times Lead Counsel's $11,108,968.50 lodestar.[9]  Joint Decl., ¶¶83-84.  This modest multiplier is reasonable and is in line with (or lower

---

[8]    Additionally, Lead Counsel have performed and will continue to perform work in connection with the administration of the Settlement.  No additional compensation will be sought for that work.

[9]    Lead Counsel's lodestar figure is based upon the firms' current billing rates (subject to annual increases) and does not include charges for expense items.  *See also Jenkins*, 491 U.S. at 283-86 (courts may use either current rates or past

than) multipliers routinely awarded in courts in this Circuit.  *See, e.g.*, *Array Biopharma*, 60 F.4th at 1266 (2.8 multiplier "'consistent with the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit'"); *DaVita*, 2021 WL 2981970, at *3 (awarding fee representing 2.75 multiplier, "which is at the low end of the typical range of multipliers routinely approved by courts in this District and the Tenth Circuit"); *In re Miniscribe Corp.*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming application of a 2.57 multiplier); *Crocs*, 2014 WL 4670886, at *4-*5 (collecting authority approving multipliers ranging from 2.5 to 4.6 and holding that the 1.23 multiplier was "well below" other approved multipliers); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 2006 WL 8429707, at *4 (D. Colo. Sept. 29, 2006) ("[L]ead counsel who create a common fund for the benefit of a class are rewarded with fees that often are at least two times the reasonable lodestar figure, and in some cases reach as high as five to ten times the lodestar figure.").

Lead Counsel's hourly rates are also appropriate in this complex securities class action.  The Tenth Circuit has noted that courts should look to rates of "counsel litigating a complex securities class action on a contingent basis . . . to determine whether counsel charged reasonable rates." *Array Biopharma*, 60 F.4th at 1266.  Here, Lead Counsel's rates range from $830 to $1,480 for partners/counsel and $280 to $800 for associates.  *See* Declaration of Darryl J. Alvarado Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), attached as Exhibit 4 to the Joint Decl.; Declaration of Thomas W. Elrod Filed on Behalf of Kirby McInerney LLP in Support of Application for Award of Attorneys' Fees and Expenses ("KM Decl."), attached as Exhibit 5 to the Joint Decl.  These rates are comparable to those approved in other securities class actions in the Tenth Circuit.  *See, e.g.*, *Array*

---

rates with interest when calculating the lodestar amount because either method provides "[a]n adjustment for delay in payment [which] is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee").

*Biopharma*, 60 F.4th at 1266 (finding "rates charged in this case ($455 to $1,050) were 'generally consistent' with those approved in similar cases").

Accordingly, the reasonableness of Lead Counsel's 23.56% fee request is confirmed by a lodestar cross-check analysis.

### D.    The Novelty and Difficulty of the Legal and Factual Questions

An analysis of the novelty and difficulty of the issues involved in this Action also favors granting Lead Counsel's request for attorneys' fees.  "Securities fraud class actions are by their nature, complex and difficult to prove."  *In re Charter Commc'ns, Inc.*, 2005 WL 4045741, at *15 (E.D. Mo. June 30, 2005); *see also Voulgaris v. Array Biopharma, Inc.*, 2021 WL 6331178, at *13 (D. Colo. Dec. 3, 2021) ("[S]ecurities class actions present inherently complex and novel issues, which are constantly evolving."), *aff'd*, 60 F.4th 1259 (10th Cir. 2023); *Crocs*, 2014 WL 4670886, at *3 ("[l]itigating an action under the PSLRA is not a simple undertaking").  This is true here.

#### 1.    Risk in Establishing Liability

Plaintiffs and Lead Counsel faced substantial risks in moving forward with this Action. Although the Court largely denied Defendants' motion to dismiss, "that ruling provides no guarantee that [Plaintiffs] will ultimately prevail on the merits."  *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).  While Plaintiffs are confident that their claims are meritorious and supported by the evidence, there nonetheless are serious questions of law and fact that would make continuing to litigate risky and that would carry a substantial risk of recovering limited or no damages if the Court or jury agreed with any of Defendants' arguments at summary judgment or at trial.  Joint Decl., ¶¶58-60.

#### 2.    Risk in Establishing Loss Causation and Damages

Even if Plaintiffs ultimately succeeded in proving liability, Plaintiffs also faced significant risks in establishing loss causation and damages.  Plaintiffs would be required to prove that

Defendants' alleged misstatements inflated Compass's stock price during the Class Period, and that, upon the disclosures relating to such misinformation, the stock price dropped, damaging the Class. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).

Even though Lead Counsel believed they would be able to present expert testimony to establish loss causation and damages, Defendants would likely seek to exclude that expert testimony through a *Daubert* motion. Even if unsuccessful, Defendants would no doubt advocate at trial for a substantially smaller damages figure, or zero.

Moreover, the jury would have been presented with expert testimony on the portions of Compass's stock price declines related to the disclosure of the alleged fraud and tasked with determining what amount, if any, of the price declines was fraud-related. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *20 (S.D.N.Y. July 10, 2019) ("plaintiff[s] ultimately will need to disaggregate confounding factors to prove economic loss"). As a result, the crucial element of damages would almost certainly have been reduced at trial to an unpredictable and risky "battle of the experts." *See, e.g.*, *Cendant*, 264 F.3d at 239 ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

### 3. Other Risks

"Plaintiffs also faced other risks inherent in most complex litigation, such as obtaining and maintaining class certification, having to defend and/or succeed against post-judgment appeals, and expert credibility concerns at trial." *Array Biopharma*, 2021 WL 6331178, at *7. Accounting for all of the foregoing risks, Plaintiffs and the Class would by no means be assured of a ruling in their favor. Accordingly, the novelty and difficulty of these legal and factual questions further support the Settlement achieved and the requested attorneys' fees.

### E.    The Skill Required and the Experience, Reputation, and Ability of Lead Counsel

The skill required and the experience, reputation, and ability of the attorneys also support the requested fee award. *See Johnson*, 488 F.2d at 717-19. Lead Counsel are among the nation's preeminent law firms in class action securities litigation and have successfully litigated and tried numerous class actions. *See* RGRD Decl., Ex. F; KM Decl., Ex. D (attaching firm resumes).

The quality of opposing counsel is also important in evaluating the quality of services rendered by Lead Counsel. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). During the course of this Action, Defendants have been represented by experienced and skilled defense counsel, Cleary Gottlieb Steen & Hamilton LLP, which spared no effort in the defense of its clients' claims. In the face of this formidable opposition, Lead Counsel developed their case so as to persuade Defendants to agree to a substantial $48,000,000 financial recovery for the Class. The skill, experience, reputation, and ability of Plaintiffs' and Defendants' respective counsel further support the requested fee award.

### F.    The Contingent Nature of the Fee

Courts in this Circuit have found that "the risk of non-recovery" weighs heavily in considering an award of attorneys' fees. *Vaszlavik v. Storage Corp.*, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000); *see also Crocs*, 2014 WL 4670886, at *4 ("A contingent fee arrangement often weighs in favor of a greater fee because '[s]uch a large investment of money [and time] place[s] incredible burdens upon law practices.'") (alterations in original).

Lead Counsel have prosecuted this Action on a wholly contingent basis for over two years and have borne all the associated risks present in securities class actions. From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation, which would require a significant investment of attorney time and expenses, with no guarantee of ever being compensated. They also understood that Defendants would (and, in fact, did) retain a

large and highly experienced corporate defense firm to defend them.  In undertaking this risk, Lead Counsel were obligated to, and did, ensure that sufficient resources were dedicated to the prosecution of this Action.  When this case settled, Plaintiffs were undertaking expensive discovery, and dispositive motions would likely be filed at its conclusion.

Litigation of class actions cases can be extremely protracted and yet salaries, leases, and other expenses must be paid, while counsel waits for years to be paid, if at all.  For example, in *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, No. 02-cv-05893 (N.D. Ill.), Co-Lead Counsel Robbins Geller litigated the case through trial and appeal for 14 years before reaching a class-wide settlement.  Likewise, in *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 1:11-md-2262 (S.D.N.Y.), Co-Lead Counsel Kirby McInerney litigated the case for more than 14 years through various rounds of dispositive motion practice and appeals prior to finalizing class-wide settlements on behalf of futures traders.

Moreover, as a substantial number of motions to dismiss are granted in securities class actions,[10] there existed a real risk that Lead Counsel would invest substantial resources and receive nothing at all in return.  *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Class Counsel took the case on a contingent basis, which permits a higher recovery to compensate for the risk of recovering nothing for their work.").  Unlike defendants' counsel, who are paid substantial guaranteed hourly rates and reimbursed promptly for their expenses, Lead Counsel have not been compensated for any time or expenses since the case began and would have received no compensation had it not been resolved successfully.

### G.    The Preclusion of Other Employment by Lead Counsel

As demonstrated by the over 17,900 hours incurred in prosecuting this Action, Lead Counsel were precluded from other employment due to their litigation of this Action.  Accordingly, this

---

[10]    *See* Jessica Corso, *Securities Defense Bar Notched More Dismissals In '24*, Law360, Jan. 22, 2025, https://www.law360.com/securities/articles/2287473.

factor weighs in favor of approving the fee request. *See Lucas v. Kmart Corp.*, 2006 WL 2729260, at *6 (D. Colo. July 27, 2006) ("Large-scale class actions . . . necessarily require a great deal of work, and a concomitant inability to take on other cases.").

### H.      The Undesirability of the Action

Securities class actions have often been recognized as "undesirable" due to the financial burden on counsel, and the time demands required to litigate cases of such size and complexity. *See, e.g.*, *Millsap v. McDonnell Douglas Corp.*, 2003 WL 21277124, at *12 (N.D. Okla. May 28, 2003); *accord Maxar*, 2024 WL 98387, at *8. Like the rest of the relevant *Johnson* factors, this factor too supports the approval of Lead Counsel's requested fees.

### IV.      THE REACTION OF THE CLASS TO THE REQUESTED FEE FURTHER SUPPORTS ITS REASONABLENESS

Courts in this Circuit recognize the significance of class member reaction to the request for attorneys' fees and expenses. *See Crocs*, 2014 WL 4670886, at *5. Over 31,500 copies of the Postcard Notice were mailed or emailed to potential Class Members and nominees, advising them that Lead Counsel would be requesting an award of attorneys' fees not to exceed 33-1/3% of the Settlement Amount, plus expenses not to exceed $450,000, plus interest earned on both amounts. *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date, ¶11, attached as Exhibit 3 to the Joint Decl. As of the filing of this motion, no Class Member has objected to these requests, supporting their reasonableness. *See Crocs*, 2014 WL 4670886, at *5. Moreover, Plaintiffs fully support the Settlement and Lead Counsel's request for fees and expenses. *See* Mathurin Decl., ¶¶8-12; Kellner Decl., ¶¶5-6.

### V.      LEAD COUNSEL ARE ENTITLED TO AN AWARD OF THEIR REASONABLE LITIGATION EXPENSES

"[A]n attorney who creates . . . a common fund for . . . a class is entitled to receive reimbursement of all reasonable costs incurred." *Vaszlavik*, 2000 WL 1268824, at *4.

- 13 -

Here, Lead Counsel request payment of $368,527.48 for their costs and expenses in connection with the prosecution of this Action, plus interest at the same rate as earned by the Settlement Fund. A large portion of these expenses consist of costs related to Plaintiffs' investigation, document management, expert retention, and mediation efforts. *See* RGRD Decl., Ex. B; KM Decl., Ex. B. These expenses were directly related to the prosecution of this Action and are all of the type of expenses that would be paid by a fee-paying client. *See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cnty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993) (expenses properly awarded if charges would normally be billed to client); *DaVita*, 2021 WL 2981970, at *4 (awarding similar expenses which are "routinely awarded in similar actions"); *In re Bank of Am. Wage & Hour Emp. Litig.*, 2013 WL 6670602, at *4 (D. Kan. Dec. 18, 2013) (finding expenses reasonable if "the[y] are of the kind and character typically borne by clients in non-contingent fee litigation, including the retention of experts, copying charges, transcript charges, online research and mediation services").

To date, no objections have been received regarding this expense request.

## VI.   THE REQUESTED PSLRA AWARDS FOR PLAINTIFFS SHOULD BE APPROVED

The PSLRA limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). Courts in this Circuit routinely approve such awards. *See Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 1387110, at *6-*7 (D. Colo. Apr. 13, 2021) (awarding $10,000 to each lead plaintiff for a total award of $20,000); *MolyCorp*, 2017 WL 11598681, at *2 (awarding $10,000 to three

- 14 -

plaintiffs); *In re Davita Healthcare Partners, Inc.*, 2015 WL 3582265, at *5 (D. Colo. June 5, 2015) (awarding $10,000).

Here, as set forth in their declarations, the requested collective award of $20,000 is more than justified by Plaintiffs' efforts on behalf of the Class Members and represents approximately 0.04% of the Settlement Amount. *See* Mathurin Decl., ¶¶13-15; Kellner Decl., ¶¶4, 7. Plaintiffs have actively and effectively fulfilled their obligations as the representatives for the Class, complying with all of the many demands placed on them during the prosecution and settlement of this Action. Plaintiffs' participation in this Action fully warrants the Court's approval of awards of $10,000 to each of the Plaintiffs.

## VII.    CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court: (i) award Lead Counsel attorneys' fees of 23.56% of the Settlement Amount and payment of litigation expenses of $368,527.48, plus the interest earned on both amounts; and (ii) award Plaintiffs a total of $20,000 in connection with their representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  June 25, 2025                    Respectfully submitted,

STUEVE SIEGEL HANSON LLP
NORMAN E. SIEGEL, D. Kan. #70354


*s/ Norman E. Siegel*
NORMAN E. SIEGEL

- 15 -

460 Nichols Road, Suite 200
Kansas City, MO  64112
Telephone:  816/714-7100
816/714-7101 (fax)
siegel@stuevesiegel.com

*Local Counsel*

ROBBINS GELLER RUDMAN
  & DOWD LLP
ELLEN GUSIKOFF STEWART
DARRYL J. ALVARADO
HEATHER G. GEIGER
JOSEPH J. TULL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com
dalvarado@rgrdlaw.com
hgeiger@rgrdlaw.com
jtull@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIN W. BOARDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
eboardman@rgrdlaw.com

KIRBY McINERNEY LLP
ANDREW M. McNEELA
THOMAS W. ELROD
IRA M. PRESS
LAUREN WANDS
250 Park Avenue, Suite 820
New York, NY  10177
Telephone:  212/317-2300
212/751-2540 (fax)
amcneela@kmllp.com
telrod@kmllp.com
ipress@kmllp.com
lwands@kmllp.com

*Lead Counsel for Lead Plaintiff*

- 16 -

- 17 -

FRIEDMAN & ANSPACH
EUGENE FRIEDMAN
DANIEL TREIMAN
1500 Broadway
New York, NY  10036
Telephone:  212/354-4500
efriedman@friedmananspach.com
dtreiman@friedmananspach.com

*Additional Counsel*