UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| LOCAL 295 IBT EMPLOYER GROUP WELFARE FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 2:22-cv-02432-EFM-ADM |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| COMPASS MINERALS INTERNATIONAL, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) ) | |

**JOINT DECLARATION OF DARRYL J. ALVARADO AND
ANDREW M. MCNEELA IN SUPPORT OF MOTIONS FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF
PLAN OF ALLOCATION, AN AWARD OF ATTORNEYS' FEES AND
EXPENSES, AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78u-4(a)(4)**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT .............................................................................2

II.   THE LITIGATION ............................................................................................6

      A.    Local 338 Is Appointed Lead Plaintiff, and Kirby McInerney and Robbins
            Geller Are Appointed Co-Lead Counsel............................................................6

      B.    Plaintiffs Substantially Defeat Defendants' Motion to Dismiss ............................6

      C.    Defendants' Motion for Interlocutory Review .........................................................8

      D.    Class Certification............................................................................................8

      E.    Fact Discovery ................................................................................................10

            1.    Requests for Documents ................................................................................10

                  a.    Document Requests Directed at Defendants.................................10

                  b.    Document Requests Directed at Plaintiffs ....................................12

            2.    Interrogatories.................................................................................................12

                  a.    Interrogatories Directed at Defendants .........................................12

                  b.    Interrogatories Directed at Plaintiffs.............................................13

            3.    Fact Depositions..............................................................................................13

            4.    Discovery Directed at Nonparties..................................................................14

III.  MEDIATION AND SETTLEMENT EFFORTS ................................................16

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ..............17

      A.    Reasons for the Settlement..............................................................................18

      B.    Notice to the Class Meets the Requirements of Due Process and Federal
            Rule of Civil Procedure 23 .............................................................................20

V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................22

VI.   LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND
      EXPENSES IS REASONABLE.........................................................................23

      A.    Lead Counsel's Fee Request Is Reasonable.....................................................24

**Page**

    1.    The Amount Involved and the Results Obtained ......................................24

    2.    Awards in Similar Cases ............................................................................25

    3.    The Considerable Time and Labor Expended by Plaintiffs' Counsel ......................................................................................................25

    4.    The Novelty and Difficulty of the Legal and Factual Questions ...............26

    5.    The Skill Required and the Experience, Reputation, and Ability of Counsel ......................................................................................................27

    6.    The Contingent Nature of the Fee Further Supports Plaintiffs' Counsel's Request ...............................................................................27

    7.    The Preclusion of Other Employment by Plaintiffs' Counsel and Undesirability of the Action......................................................................28

    8.    The Reaction of the Class ..........................................................................28

  B.    Plaintiffs' Counsel's Request for Payment of Litigation Expenses Is Fair and Reasonable ..............................................................................28

  C.    Plaintiffs' Request for an Award for Their Work on Behalf of the Class .............30

VII.    CONCLUSION...............................................................................................30

**TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Declaration of Earl Mathurin |
| 2 | Declaration of Linda Kellner |
| 3 | Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date |
| 4 | Declaration of Darryl J. Alvarado Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses |
| 5 | Declaration of Thomas W. Elrod Filed on Behalf of Kirby McInerney LLP in Support of Application for Award of Attorneys' Fees and Expenses |
| 6 | Declaration of Norman E. Siegel Filed on Behalf of Stueve Siegel Hanson LLP in Support of Application for Award of Attorneys' Fees and Expenses |
| 7 | Declaration of Eugene S. Friedman Filed on Behalf of Friedman & Anspach |

We, DARRYL J. ALVARADO and ANDREW M. MCNEELA, declare as follows:

1.       I, Darryl J. Alvarado, am an attorney duly licensed to practice before all of the courts of the State of California, and I have been admitted *pro hac vice* to appear before this Court in the above-captioned action ("Action" or "Litigation").[1]  I am a partner of the firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), counsel of record for plaintiff Local 295 IBT Employer Group Welfare Fund ("Local 295").  I have been actively involved in the prosecution and resolution of this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based on my active participation and supervision of all material aspects of the Action.

2.       I, Andrew M. McNeela, am an attorney duly licensed to practice law in the State of New York, and I have been admitted *pro hac vice* to appear before this Court in the Action.  I am a partner of the firm of Kirby McInerney LLP ("Kirby McInerney"), counsel for lead plaintiff Retail Wholesale Department Store Union Local 338 Retirement Fund ("Local 338" and, collectively with Local 295, "Plaintiffs").  I have been actively involved in the prosecution and resolution of this Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based on my active participation and supervision of all material aspects of the Action.

3.       Robbins Geller and Kirby McInerney have been appointed as Lead Counsel for the Class.

4.       We jointly submit this declaration in support of Plaintiffs' motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rules"), for final approval of the Settlement, which provides for a cash recovery of $48,000,000 (the "Settlement Amount"), and for approval of the proposed plan for allocating the net proceeds of the Settlement to eligible Class Members (the "Plan of Allocation").  We also submit this declaration in support of Lead Counsel's motion for an award

---

[1]     All capitalized terms that are not defined herein have the same meanings as set forth in the Stipulation of Settlement dated March 27, 2025 (ECF 135-1) (the "Stipulation" or the "Settlement Agreement").

of attorneys' fees and expenses and awards to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their representation of the Class.[2]

5.     This declaration is submitted in support of the Settlement and we believe is inadmissible in any subsequent proceedings, other than in connection with the approval of the Settlement.  If the Settlement is not approved by the Court, we believe that this declaration and the statements contained herein are without prejudice to the Plaintiffs' position on the merits of this Action.

## I.     PRELIMINARY STATEMENT

6.     The $48,000,000 proposed Settlement is the culmination of hard-fought litigation.  As detailed below, Plaintiffs, through Lead Counsel, zealously prosecuted the Class's claims at every stage of this Action, successfully defending their claims against Defendants'[3] dismissal attempt and motion to certify for interlocutory review.  The Settlement, which represents approximately 14% to 21% of the estimated maximum recoverable damages (as calculated by Plaintiffs' expert assuming success by Plaintiffs on all liability and loss causation issues and depending on certain assumptions used to calculate the number of damaged shares and the trading model used to estimate damages), is a tremendous result for the Class under the circumstances.  The Settlement recovery is ***four times*** greater than the amount the SEC obtained from Compass to resolve non-fraud based claims.[4]

7.     The Settlement was achieved after more than two years of litigation, during which Lead Counsel, *inter alia*:

---

[2]     In conjunction with this declaration, Plaintiffs and Lead Counsel are submitting: (i) the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation (the "Settlement Memorandum"); and (ii) the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. §78u-4(a)(4) (the "Fee Memorandum").

[3]     The Defendants are: Compass Minerals International, Inc. ("Compass"), Francis J. Malecha ("Malecha"), Anthony J. Sepich ("Sepich"), and James D. Standen ("Standen").

[4]     *See In re Compass Minerals Int'l, Inc.*, Securities Act Release No. 11107, Exchange Act Release No. 95889, Accounting and Auditing Enforcement Act Release No. 4340, 2022 WL 4445488 (Sept. 23, 2022), available at: https://www.sec.gov/files/litigation/admin/2022/33-11107.pdf ("Consent Order").

- Conducted a thorough and wide-ranging investigation concerning the alleged fraudulent misrepresentations made by Defendants, which included an extensive review of publicly available information concerning Compass's transition to a continuous mining and continuous haulage ("CMCH") system at Compass's underground salt mine in Goderich, Ontario, Canada ("Goderich");

- Prepared and filed the Amended Complaint for Violations of the Federal Securities Laws (ECF 23) (the "Amended Complaint") based on their investigation;

- Opposed and defeated in substantial part Defendants' motion to dismiss the Amended Complaint;

- Opposed and defeated Defendants' request for interlocutory review of the Motion to Dismiss Order (the "Motion for Interlocutory Appeal") (ECF 44, 45);

- Prepared for and defended depositions of Plaintiffs' market efficiency expert, and deposed Defendants' market efficiency expert, during class certification discovery;

- Conducted extensive party and third-party document discovery for nearly a year, including the exchange, careful review, and analysis of 728,551 pages of documents;

- Prepared for and conducted six fact depositions;

- Responded to Defendants' various discovery requests and interrogatories;

- Engaged in multiple lengthy and contentious discovery-related disputes concerning the scope of fact discovery, whether Defendants were required to produce documents in addition to what they produced to the SEC, and Defendants' privilege logs and assertions of privilege over various materials; and

- Exchanged mediation briefs laying out the Parties' views of the strengths and weaknesses of the allegations and attended an in-person mediation session with an experienced, well-regarded mediator, and engaged in post-mediation negotiation efforts, in an attempt to resolve the Action.

8. As further detailed herein, given Lead Counsel's comprehensive prosecution of this Action, Plaintiffs fully understood the strengths of their case as well as the substantial risks they faced in proceeding with the Litigation at the time the Settlement was reached. And, while Plaintiffs are confident that their claims are supported by both the documentary evidence and deposition testimony produced and developed through fact discovery, Plaintiffs understood the real risks in proving their claims at summary judgment and trial.

- 3 -

9.     Plaintiffs alleged that, in violation of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC"), Defendants engaged in a fraudulent scheme to artificially inflate Compass common stock by making materially false and misleading statements and/or omitting material information regarding the cost savings generated by CMCH installation at Goderich. ¶¶30-219.[5]  Defendants, conversely, have argued consistently that they made no false or misleading statements or omissions during the Class Period, and that even if they did, they did not do so with scienter. *See, e.g.*, ECF 27 at 22-34.

10.     Likewise, Defendants have consistently argued that Plaintiffs would be unable to show scienter, often citing to the fact that the SEC Consent Order did not include allegations of scienter. *See, e.g.*, ECF 27 at 13-22.

11.     Accordingly, the proposed Settlement avoids the substantial risks of further litigation on these issues and others.  Indeed, Plaintiffs faced the substantial possibility that a jury would adopt Defendants' views regarding the showing necessary to establish falsity and/or scienter, which would have potentially resulted in a substantially reduced recovery, or no recovery whatsoever for the Class.  Given the significant risks as well as the additional costs and delay associated with bringing this Action to trial, Plaintiffs and Lead Counsel concluded that the $48,000,000 Settlement was in the best interest of the Class.  The Court preliminarily approved the Settlement by Order dated April 7, 2025 (the "Preliminary Approval Order").  *See* ECF 137.

12.     Lead Counsel have prosecuted this Action on a wholly contingent basis and, thus, have advanced or incurred all the litigation expenses, charges, and costs associated with that prosecution.  Lead Counsel shouldered substantial risk in doing so and, to date, have not received any compensation for their efforts.  Accordingly, in consideration of Lead Counsel's extensive

---

[5]    All "¶_" or "¶¶_" references are to the Amended Complaint, unless otherwise stated.

efforts on behalf of the Class, Lead Counsel, on behalf of Plaintiffs' Counsel, are applying for an award of attorneys' fees in an amount of 23.56% of the Settlement Fund (which amount includes interest). Such a fee award is fair and reasonable and is within the range of, if not below, fee percentages frequently awarded in this type of case. Further, Lead Counsel's fee request is more than justified by the particular facts of this case, including the substantial benefits conferred on the Class, the risks undertaken, the quality of representation, the nature and extent of the legal services performed, and the fact that the Parties settled after a mediation and in the midst of fact discovery.

13.     Lead Counsel also seek payment of $368,527.48 for the expenses, costs, and charges that were reasonably and necessarily incurred by Plaintiffs' Counsel in their prosecution of this Action, plus the interest earned thereon. These expenses, charges, and costs include: (i) the costs associated with taking or defending a combined total of eight fact and expert witness depositions, such as travel expenses and court reporter and videographer fees; (ii) hosting and managing a database of over 720,000 pages of documents produced in the course of discovery; (iii) online factual and legal research; (iv) the fees and expenses of Plaintiffs' expert whose services were necessary for the successful prosecution of this Action; and (v) mediation fees. As will be evident from the discussion below regarding Lead Counsel's efforts in achieving this outstanding result for the Class, these expenses were reasonable and necessary.

14.     Plaintiffs Local 338 and Local 295, each institutional investors with significant financial interests in the outcome of this case and which remained actively engaged in its progress, support both the Settlement and Lead Counsel's request for attorneys' fees and expenses. *See* Declaration of Earl Mathurin ("Mathurin Decl."), submitted on behalf of Local 338, attached as Exhibit 1 hereto; Declaration of Linda Kellner ("Kellner Decl."), submitted on behalf of Local 295, attached as Exhibit 2 hereto. Because Plaintiffs' involvement in this Action is the type of involvement envisioned by Congress in enacting the Private Securities Litigation Reform Act of

1995, 15 U.S.C. §78u-4, *et seq.* (the "PSLRA"), Plaintiffs' approval of the relief sought here is entitled to significant weight by the Court in approving the Settlement and awarding attorneys' fees and expenses to counsel.  Further, although the July 9, 2025 deadline for exclusions/objections has not yet passed, the reaction of the Class thus far has been positive.  To date, there have been no objections to any aspect of the Settlement, including Lead Counsel's request for attorneys' fees and expenses, and there have been zero requests for exclusion from the Class.[6]

15.     The following section summarizes the primary events that occurred during the course of the Litigation and the extensive legal services provided by Lead Counsel.

## II.    THE LITIGATION

### A.    Local 338 Is Appointed Lead Plaintiff, and Kirby McInerney and Robbins Geller Are Appointed Co-Lead Counsel

16.     On October 21, 2022, Local 295 filed the initial complaint in this Action against Defendants alleging that Defendants violated §§10(b) and 20(a) of the Exchange Act by issuing false and misleading statements and omissions.  ECF 1.

17.     On December 20, 2022, Local 338 moved to be appointed as lead plaintiff and for approval of Kirby McInerney and Robbins Geller as lead counsel.  ECF 5, 6.  The Court granted the motion, and appointed Local 338 as lead plaintiff and the law firms of Kirby McInerney and Robbins Geller as lead counsel on January 11, 2023.  ECF 8.

### B.    Plaintiffs Substantially Defeat Defendants' Motion to Dismiss

18.     Following their appointment, Lead Counsel continued their extensive factual investigation, analyzing years of Compass's public filings with the SEC, the SEC Consent Order,

---

[6]     *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), ¶¶15-17, attached hereto as Exhibit 3.  Should any objections or requests for exclusion be received after the date of this submission, Lead Counsel will address them in their reply papers to be filed with the Court on July 23, 2025.

media reports, analyst reports, and trading data.  Thereafter, Plaintiffs filed the Amended Complaint on March 13, 2023.  ECF 23.

19.    The Amended Complaint alleged violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by the SEC, on behalf of all purchasers of Compass common stock during the Class Period.  *Id.*, ¶1.  More specifically, the Amended Complaint alleged that, during the relevant time period, Defendants issued materially false and misleading statements concerning CMCH's failure to reduce costs and improve profitability as Defendants had promised. *Id.*, ¶¶7-13.  The Amended Complaint further alleged that Compass's stock price was artificially inflated due to these allegedly false and misleading statements, and declined when the alleged corrective disclosures occurred, causing the Class to suffer damages.  *Id.*, ¶¶190-192.

20.    On May 12, 2023, Defendants moved to dismiss the Amended Complaint.  ECF 26-27.  Among other things, Defendants asserted that: (i) the statements alleged in the Amended Complaint as false consisted of inactionable, generalized statements of aspiration or opinion; (ii) Plaintiffs had failed to plead scienter; and (iii) references to the SEC Consent Order should be stricken and could not be relied upon to form Plaintiffs' claims.  ECF 27.  Plaintiffs opposed Defendants' motion on July 12, 2023.  ECF 35.  Defendants filed their reply on August 24, 2023. ECF 38.

21.    By Memorandum and Order dated December 12, 2023 (ECF 40) (the "Motion to Dismiss Order"), the Court largely denied Defendants' motion to dismiss.  *IBT Emp'r Grp. Welfare Fund v. Compass Minerals Int'l, Inc.*, 706 F. Supp. 3d 1225 (D. Kan. 2023).  While the Court determined that the actionability of certain statements was not adequately pled, the Court denied the motion to dismiss with respect to all other claims alleged in the Amended Complaint.  *Id.*

22.     Defendants answered the Amended Complaint on January 16, 2024. ECF 46. In their answer, Defendants denied all of Plaintiffs' material allegations and raised 42 separate affirmative defenses. *Id.*

### C.     Defendants' Motion for Interlocutory Review

23.     Shortly after entry of the Motion to Dismiss Order, but before answering the Amended Complaint, Defendants filed the Motion for Interlocutory Appeal.  ECF 44-45. Defendants argued, among other things, that courts were split over whether plaintiffs could rely on an SEC Consent Order as a basis for a complaint under Rule 11.  ECF 45.  Plaintiffs opposed the motion on January 19, 2024.  ECF 47.  Defendants filed their reply on February 2, 2024.  ECF 51.

24.     On March 15, 2024, by Memorandum and Order, the Court denied Defendants' Motion for Interlocutory Appeal.  ECF 57.  The Court reasoned that "[s]o long as Plaintiffs' overall investigation comports with Rule 11(b), Plaintiffs are free to rely on third-party sources in alleging their claims." *Id.* at 8.

### D.     Class Certification

25.     On August 1, 2024, Plaintiffs filed a motion for class certification (the "Class Certification Motion"), which requested that the Court certify the class, appoint Local 338 and Local 295 as Class Representatives, and appoint Kirby McInerney and Robbins Geller as Class Counsel. ECF 85.  In their Class Certification Motion, Plaintiffs argued that the Action was appropriate for class action treatment and that all the requirements of Rule 23 had been satisfied. *Id.*  In support of their motion, Plaintiffs submitted an expert report from W. Scott Dalrymple.  ECF 85-1.  In his report, among other things, Mr. Dalrymple: (i) explained why all five of the *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) factors and all three of the *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001) factors were met; (ii) detailed the event study he undertook concerning Compass's stock price movement as a result of quarterly earnings announcements; and (iii) concluded that Compass

common stock traded in an efficient market throughout the Class Period. *Id.* Mr. Dalrymple also opined that damages pursuant to Plaintiffs' theory of the case could be proven on a class-wide basis. *Id.*

26. On December 16, 2024, Defendants filed their opposition to Plaintiffs' Class Certification Motion, arguing only that the Class Period should be shortened. ECF 99. Defendants, while conceding that Compass stock traded in an efficient market, argued nonetheless that Plaintiffs could not rely on the presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), because Plaintiffs had not shown that the final alleged corrective disclosure impacted the price of Compass stock. *Id.* at 9-15. In support, Defendants attached to their opposition the expert report of Professor David Denis, which argued that the last corrective disclosure did not reveal any new information about Defendants' alleged misrepresentations. ECF 100-7.

27. Plaintiffs filed their reply in further support of their Class Certification Motion on January 27, 2025, in which they addressed each of Defendants' arguments against class certification. ECF 119. Namely, Plaintiffs argued that the last corrective disclosure did in fact reveal new information to the market, and that by failing to challenge price impact as to all corrective disclosures, Defendants could not meet their burden of establishing a lack of price impact necessary to rebut the *Basic* presumption of reliance. *Id.*

28. Defendants deposed Mr. Dalrymple on December 12, 2024, in connection with his expert report submitted in support of Plaintiffs' Class Certification Motion. Plaintiffs deposed Professor Denis on January 16, 2025, in connection with his expert report submitted in opposition to Plaintiffs' Class Certification Motion.

29. The parties agreed in principle to settle the case while the Class Certification Motion was pending.

### E.      Fact Discovery

30.     As set forth herein, Plaintiffs diligently pursued discovery efforts throughout this Litigation.   Plaintiffs' efforts included, among other things: (i) preparing and serving initial disclosures, requests for production of documents, and interrogatories on Defendants; (ii) exchanging correspondence with Defendants concerning various discovery issues; (iii) serving document subpoenas on 29 nonparties; (iv) obtaining, reviewing, and analyzing more than 720,000 pages of documents produced by Defendants and nonparties; (v) reviewing and analyzing privilege log entries; (vi) reviewing and producing documents in response to Defendants' discovery requests, as well as providing written responses to Defendants' document requests and interrogatories; and (vii) preparing for and taking six fact depositions of current and former Compass employees.

### 1.      Requests for Documents

### a.      Document Requests Directed at Defendants

31.     Following entry of the Motion to Dismiss Order, and the lifting of the PSLRA-mandated discovery stay, formal discovery commenced.  Plaintiffs served their First Set of Requests for Production of Documents ("Plaintiffs' First RPDs") on Defendants on March 15, 2024, which requested documents produced to the SEC during the SEC's investigation into Compass that ultimately resulted in the SEC Consent Order.  Plaintiffs served their Second Set of Requests for Production of Documents ("Plaintiffs' Second RPDs") on April 9, 2024.  Plaintiffs served three additional sets of requests for production on November 20, 2024, November 22, 2024, and December 16, 2024.

32.     Defendants served their Responses and Objections to Plaintiffs' First RPDs on April 15, 2024.  Thereafter, the Parties met and conferred to discuss the production of the documents identified in Plaintiffs' First RPDs – namely, documents already produced to the SEC.  Defendants

first produced documents in response to Plaintiffs' First RPDs on May 15, 2024, and made subsequent productions over the next three months.

33.    Defendants served their Responses and Objections to Plaintiffs' Second RPDs on May 9, 2024.  Defendants generally objected to producing any documents outside of what was produced to the SEC.  The Parties met and conferred about the propriety of Defendants' objections several times in the following weeks in efforts to come to a resolution without Court intervention.

34.    On July 8, 2024, after the Parties were unable to negotiate a resolution, Plaintiffs moved for a discovery hearing.  ECF 75.  The Court granted the motion for a discovery hearing on July 9, 2024, setting the hearing for July 16, 2024.  ECF 76.  As noted in the Court's July 17, 2024 order, during the July 16, 2024 hearing, the Court found Defendants' Responses and Objections to Plaintiffs' Second RPDs to be inadequate, and ordered Defendants to supplement their responses by July 23, 2024.  ECF 78.  The Court ordered that "[t]he supplemental responses must make clear exactly what defendants are producing in response to each request" in accordance with Federal Rule of Civil Procedure 34(b)(2)(C).  *Id.* at 1.  The Court further ordered that the Parties continue to meet and confer on these issues, and that Plaintiffs submit any requests still in dispute by August 1, 2024. *Id.* at 2.  On July 31, 2024, Plaintiffs emailed the Court that the Parties no longer needed the Court's assistance with this dispute.

35.    During these months, the Parties continued negotiating the relevant topics for discovery, sources to be searched, the relevant time period, custodians, and search terms.  In conjunction and simultaneously with these negotiations, Defendants began producing documents and corresponding privilege logs to Plaintiffs on a rolling basis.  Throughout the discovery process, the Parties engaged in near constant negotiations, including numerous telephonic meet-and-confers and the exchange of written proposals and counter proposals, regarding the scope of Defendants' production and the sufficiency of the many iterations of Defendants' privilege logs.

36. The careful examination and analysis of the documents produced by Defendants in a relatively quick time frame required a massive undertaking by a large team of attorneys. For example, the attorneys organized and analyzed the documents, selected those that supported Plaintiffs' allegations or could be used in Defendants' defense, identified relevant witnesses and issues, and established procedures to identify additional documents and information that had not been produced. Lead Counsel then reviewed and analyzed the documents to determine what information the documents conveyed and how they were relevant to Plaintiffs' claims. Lead Counsel also applied that understanding to other documents that had been produced.

37. As a result of Plaintiffs' discovery efforts, Defendants made 18 separate productions comprised of more than 252,000 documents totaling 601,039 pages of documents.

### b.    Document Requests Directed at Plaintiffs

38. On March 27, 2024, Defendants served their First Set of Requests for Production of Documents on Plaintiffs. On April 26, 2024, Plaintiffs served their Responses and Objections to Defendants' First Set of Requests for Production of Documents. In response to Defendants' discovery requests, Plaintiffs produced responsive, non-privileged documents on July 15, 2024.

### 2.    Interrogatories

### a.    Interrogatories Directed at Defendants

39. On May 8, 2024, Plaintiffs served their First Set of Interrogatories on Defendants, comprised of five different interrogatories that covered topics ranging from, among other things, Compass's models for projections of cost savings and salt production due to the CMCH installation. On June 7, 2024, Defendants served their Responses and Objections to Plaintiffs' First Set of Interrogatories.

40. On November 20, 2024, Plaintiffs served their Second Set of Interrogatories on Defendants, comprised of a single interrogatory asking Defendants to identify any entities to which

they would attribute comparative fault. Defendants served their Responses and Objections on December 20, 2024, and served supplemental Responses and Objections on January 10, 2025.

41. On January 29, 2025, Plaintiffs served their Third Set of Interrogatories on Defendants, comprised of contention interrogatories. The Parties reached an agreement to settle the case in principle before Defendants' responses were due.

### b. Interrogatories Directed at Plaintiffs

42. On March 27, 2024, Defendants served their First Set of Interrogatories on Plaintiffs. Plaintiffs, through Lead Counsel, served their Responses and Objections to Defendants' First Set of Interrogatories on April 26, 2024. Defendants served their Second Set of Interrogatories on Plaintiffs on January 29, 2025. The Parties reached an agreement to settle the case in principle before Plaintiffs' responses were due.

### 3. Fact Depositions

43. In preparation for summary judgment and trial, Lead Counsel took the depositions of six current and former Compass employees. These depositions required Lead Counsel to have a strong technical understanding of Compass's CMCH installation, including how companies like Compass forecast salt production levels internally and to investors. Accordingly, Lead Counsel expended significant time and effort in preparation for these depositions by identifying exhibits for these depositions among the hundreds of thousands of pages produced in discovery, and preparing deposition outlines.

44. Lead Counsel took depositions of the following party-affiliated witnesses:

| Deponent | Date of Deposition | Location | Relationship |
| --- | --- | --- | --- |
| Jon Schnieders | December 19, 2024 | Remote | Compass Vice President, Highway during the Class Period |
| Grant Burton | January 8, 2025 | Remote | Compass Vice President of Finance during the Class Period |

- 13 -

| Deponent | Date of Deposition | Location | Relationship |
|---|---|---|---|
| Jack Leunig | January 9, 2025 | Remote | Compass Senior Vice President, Operations during the Class Period |
| Karen Wernimont | January 22, 2025 | Remote | Compass Director of Finance during the Class Period |
| Theresa Womble | January 24, 2025 | Remote | Compass Director of Investor Relations during the Class Period |
| Jennifer Verdam | January 31, 2025 | Remote | Compass Controller of Goderich Mine during the Class Period |

45.     The depositions identified above were essential to establishing evidence concerning the difficulties that Compass faced in installing the CMCH system at Goderich mine, as well as Defendants' knowledge of material, undisclosed facts.  In addition, these depositions were crucial in providing the foundational admissibility of documentary evidence.

### 4.     Discovery Directed at Nonparties

46.     Plaintiffs also sought extensive discovery from third parties with knowledge relevant to Defendants' material misstatements and omissions.  Commencing on May 8, 2024, Plaintiffs began issuing subpoenas for documents to numerous relevant nonparties, including the company which manufactured the CMCH equipment, Compass investors, and financial analysts who covered Compass.

47.     Below are pertinent nonparties that Plaintiffs subpoenaed in this Action:

| Entity | Subpoena Date | Relationship |
|---|---|---|
| BMO Capital Markets Corp. | 05/08/24 | Analyst |
| Credit Suisse (USA), Inc. | 05/08/24 | Analyst |
| Deutsche Bank | 05/08/24 | Analyst |
| JPMorgan Chase & Co. | 05/08/24 | Analyst |
| J.P. Morgan Securities LLC | 05/29/24 | Analyst |

| Entity | Subpoena Date | Relationship |
|---|---|---|
| Morningstar, Inc. | 05/08/24 | Analyst |
| Stephens, Inc. | 05/08/24 | Analyst |
| CFRA Research | 05/08/24 | Analyst |
| Abrdn Inc. | 01/03/25 | Investor |
| Balyasny Asset Management L.P. | 01/03/25 | Investor |
| Cove Street Capital, LLC | 08/06/24 | Investor |
| Havas North America Inc. | 12/16/24 | Investor Relations Firm |
| Komatsu America Corp. | 08/06/24 | CMCH Machine Manufacturer |
| Kornitzer Capital Management Inc. | 01/03/25 | Investor |
| Lapides Asset Management, LLC | 01/03/25 | Investor |
| Loomis, Sayles & Company, L.P. | 01/03/25 | Investor |
| M&G Investments (Americas) Inc. | 01/03/25 | Investor |
| Myrtle Consulting Group | 08/06/24 | Consultant |
| Putnam U.S. Holdings, LLC | 01/03/25 | Investor |
| Rubicon Capital Group, LLC | 01/03/25 | Investor |
| Shapiro Capital Management LLC | 08/06/24 | Investor |
| Shiftwork Solutions LLC | 11/21/24 | Consultant |
| SouthPoint Capital Advisors LP | 01/03/25 | Investor |
| SRK Consulting | 06/17/24 | Consultant |
| The Abernathy Macgregor Group, Inc. | 12/23/24 | Investor Relations |

48.    Lead Counsel engaged in numerous meet-and-confers with most of the subpoenaed nonparties to discuss their objections to the subpoenas, negotiate the scope of the document requests, and arrange for the production of responsive documents.  In total, Plaintiffs' third-party subpoenas and subsequent negotiations resulted in the production of 127,512 pages of documents.  Lead Counsel expended significant resources obtaining, reviewing, and analyzing these documents.

## III.    MEDIATION AND SETTLEMENT EFFORTS

49.    The Settlement is the product of hard-fought, arm's-length negotiations.  Lead Counsel participated in an in-person mediation session with David M. Murphy, Esq. of Phillips ADR on November 19, 2024.  In advance of this mediation session, the Parties prepared and exchanged detailed mediation statements, reply mediation statements, and corresponding exhibits.  The case, however, did not settle after this mediation session.  Accordingly, Lead Counsel continued to vigorously prosecute the Action.  In fact, over the next two months, Plaintiffs took six fact depositions, deposed Defendants' class certification expert, and defended a deposition of their own class certification expert.

50.    Following continued settlement discussion with Mr. Murphy's assistance, on February 4, 2025, Mr. Murphy issued a mediator's proposal to settle the Litigation in return for a cash payment of $48 million, subject to Court approval.  The Parties accepted Mr. Murphy's proposal on February 7, 2025.  On February 10, 2025, the Parties jointly notified the Court of their settlement and filed a joint motion to stay the case pending finalization of settlement, which the Court granted.  ECF 128-129.  Thereafter, Lead Counsel worked diligently to negotiate the terms of the Stipulation with Defendants' Counsel and prepare preliminary approval papers.  The Parties executed the Stipulation on March 27, 2025.[7]

---

[7]    On March 27, 2025, the Parties also entered into a confidential Supplemental Agreement, under which Defendants can exercise a right to withdraw from the Settlement in the event that valid requests for exclusion from the Class exceed an agreed-upon threshold.  Pursuant to its terms, the Supplemental Agreement is not being made public but may be

51.     On March 28, 2025, Plaintiffs filed an unopposed motion seeking preliminary approval of the proposed Settlement.  ECF 134-136.  The Court granted Plaintiffs' motion for preliminary approval on April 7, 2025, and set the final settlement hearing for July 30, 2025, at 1:30 p.m.  ECF 137-138.

## IV.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

52.     The Settlement of $48,000,000 is the result of extensive, arm's-length negotiations among the Parties that reflects the strengths and weaknesses of the case, and would not have been achieved without Lead Counsel's extensive efforts described herein.

53.     Lead Counsel's reputation as attorneys who will zealously prosecute a case through the trial and appellate levels, as well as their aggressive litigation of this Action, put the Class in a strong position with Defendants and their insurance carriers and led to the superior result achieved here.

54.     As set forth below and in the Settlement Memorandum, the Settlement is a favorable result for the Class when evaluated in light of the risks of continued litigation and all of the other circumstances that courts consider when determining whether to grant final approval of a proposed class action settlement under Rule 23(e).

55.     At the time the Settlement was reached, Lead Counsel had a comprehensive understanding of the strengths and weaknesses of Plaintiffs' claims as well as the risks of further litigation.  While Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they also recognize that there were considerable challenges to continued litigation, including, but not limited to, proving that Defendants made false statements and omissions, that these alleged misrepresentations were made with scienter, and that when the truth was revealed, the

---

submitted to the Court *in camera* so as to preserve the confidentiality of the Supplemental Agreement, and particularly the agreed-upon termination threshold.

Class suffered compensable damages. Thus, the Settlement results from a realistic assessment by both sides of the strengths and weaknesses of their respective claims and defenses as well as the risks of further litigation, and is a fair, reasonable, and adequate resolution of the Action for the Class.

### A.    Reasons for the Settlement

56.    As set forth in the Settlement Memorandum, filed contemporaneously herewith, the Settlement is fair, reasonable, and adequate in light of the exceptional recovery; the unique risks and difficulties that the Litigation presented to Plaintiffs; the extensive litigation efforts undertaken by Plaintiffs and Lead Counsel; the complexity and expense of further litigation; the arm's-length settlement negotiations conducted by the Settling Parties; and the overwhelmingly positive reaction from the Class.

57.    The Settlement value of $48,000,000 in cash plus the interest which has accrued, is an exceptional result that provides an immediate and certain benefit to the Class. The Settlement represents approximately 14% to 21% of estimated recoverable damages, assuming Plaintiffs prevailed on all elements at summary judgment and trial – four to seven times the median settlement value as a percentage of estimated damages in cases of this size.[8] Notably, the Settlement is four times greater than what the SEC obtained for resolving non-fraud-based claims. *See* Consent Order.

58.    Although Plaintiffs and Lead Counsel believe that their claims are meritorious, continued litigation against Defendants posed significant risks that made recovery in any amount uncertain. Plaintiffs' ability to achieve a successful result was by no means assured, as both sides claimed the evidence supported their positions. Lead Counsel believe that Plaintiffs would have prevailed on the merits at trial. Defendants were just as adamant that Plaintiffs would have failed. Any future recovery for the Class, had the Settlement not been reached, would necessarily have

---

[8]    *See* E. Flores & S. Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 22-23, Figures 21-22 (NERA Jan. 22, 2025), available at: https://www.nera.com /content/dam/nera/publications/2025/PUB_2024_Full-Year_Sec_Trends_0122.pdf.

depended on Plaintiffs' ability to win challenging arguments on each element of their claims. Defendants have steadfastly denied liability – arguing strenuously that the allegedly false statements were not materially false and misleading when made – and have been represented by some of the most capable defense counsel in this District and across the United States.  Defendants argued throughout this Litigation that it was appropriate for Compass to re-evaluate the CMCH cost-savings model to achieve the originally disclosed CMCH cost-savings projections because the market understood the savings to derive from holistic improvements at Goderich, not just due to CMCH. Further, Defendants maintained that salt production levels depended on demand, and were also impacted by what Defendants described as unforeseeable events, including a ceiling fall and a labor strike.

59.     There was also a very real risk that Plaintiffs would not have convinced a jury that Defendants acted with scienter.  Indeed, the SEC charged Defendants with violations that did not require a heightened mental state, and Defendants maintained throughout this action that they justifiably believed that the CMCH installation would provide the promised salt production increases and cost savings.

60.     This case also posed significant risks to recovery concerning the damages suffered by the Class.  As argued in Defendants' opposition to the Class Certification Motion, Defendants maintained that the last corrective disclosure did not reveal anything new about the alleged misstatements, and that the Class Period should end 27 days earlier.  ECF 99-100.  Specifically, Defendants argued that the final alleged corrective disclosure – a November 19, 2018 press release announcing the abrupt departure of the Company's former CEO, Malecha – was not sufficiently "corrective" and was not followed by a statistically significant stock price decline.  *Id.* at 9-15. While Lead Counsel and Plaintiffs believe that the alleged false statements were corrected by the alleged disclosures, proving damages would require the opinions of experts with Defendants no

doubt raising that certain extraneous market factors should be excluded from damages calculations. The risk that Plaintiffs' damages would be significantly impacted by complex calculations argued over by experts presented a significant risk to Plaintiffs' recoverable damages.

61. Had any of Defendants' arguments been accepted in whole or in part – at summary judgment, trial, or on appeal – any potential recovery would have been dramatically reduced or eliminated altogether. The Settlement removes these substantial risks and guarantees the Class a favorable, certain cash recovery. Settling the action with Defendants at this stage of the litigation is in the best interest of the Class.

62. And were this Settlement not achieved at this time and on the terms set forth in the Stipulation, Plaintiffs potentially faced additional years of risky litigation against Defendants, with ultimate success at trial being far from certain.

63. Plaintiffs fully endorse the Settlement. *See* Mathurin Decl., ¶¶8-9; Kellner Decl., ¶5. Plaintiffs are sophisticated institutional investors that have actively overseen the prosecution of this Litigation for over two years and understand and have executed their fiduciary duties to act in the best interest of the Class. *See* Mathurin Decl., ¶¶5-7; Kellner Decl., ¶¶4-7. Lead Counsel specializes in complex securities class action litigation, and are highly experienced in such litigation. *See* RGRD Decl., Ex. F (Robbins Geller firm résumé); KM Decl., Ex. D (Kirby McInerney firm résumé). Based on their experience and knowledge of the facts and applicable law in this Litigation, Plaintiffs and Lead Counsel have determined that the Settlement is in the best interest of the Class.

**B. Notice to the Class Meets the Requirements of Due Process and Federal Rule of Civil Procedure 23**

64. In accordance with the Court's April 7, 2025 Preliminary Approval Order (ECF 137), beginning on April 29, 2025, the Claims Administrator, Verita Global ("Verita"), caused a copy of the Postcard Notice, substantially in the form annexed to the Stipulation, to be emailed or mailed by First-Class Mail to all Class Members who could be identified with reasonable effort. *See* Murray

Decl., ¶¶5-10.  In total, the Claims Administrator has disseminated over 31,500 copies of the Postcard Notice to potential Class Members and their nominees.  *Id.*, ¶11.

65.    On May 6, 2025, the Claims Administrator caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *Business Wire*.  *Id.*, ¶12.

66.    In addition, the Claims Administrator caused a copy of the Notice and Proof of Claim to be posted on the case-designated website, www.CompassMineralsSecuritiesSettlement.com.  *Id.*, ¶14.  This multi-faceted method of providing the Class notice, previously approved by the Court, is wholly appropriate because it directs notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1)(B).

67.    Among other things, the Notice advises Class Members of the essential terms of the Settlement, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, the procedure for objecting to the Settlement, and specifics on the date, time, and place of the Settlement Hearing.

68.    As set forth in the accompanying Settlement Memorandum, the Notice fairly apprises Class Members of their rights and options with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order (ECF 137), Federal Rule of Civil Procedure 23, the PSLRA, and due process.

69.    Pursuant to the Court's Preliminary Approval Order and as set forth in the notices, the deadline for Class Members to object to any aspect of the Settlement, including the Plan of Allocation and request for fees and expenses, or to request exclusion from the Class, is July 9, 2025. To date, there have been no objections to any aspect of the Settlement and zero requests for exclusion from the Class.

## V.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

70.     The Plan of Allocation, proposed by Plaintiffs set forth in the Notice (*see* Murray Decl., Ex. B at 8-11), provides the manner in which the Net Settlement Fund will be distributed to Class Members who submit timely, valid Proofs of Claim and whose claims for recovery are accepted for payment pursuant to the terms of the Settlement Agreement, including the Plan of Allocation ("Authorized Claimants").  The Plan of Allocation provides that Class Members will only be eligible to participate in the distribution of the Net Settlement Fund if they purchased or otherwise acquired Compass common stock during the Class Period and were damaged thereby and their *pro rata* share of the Net Settlement Fund is $10.00 or greater.  *See id.*

71.     The Plan of Allocation reflects the estimated amount of alleged artificial inflation in the per share price of Compass common stock that was allegedly proximately caused by Defendants' alleged false and misleading statements and omissions during the Class Period.

72.     Lead Counsel conferred with Plaintiffs' damages expert Mr. Dalrymple to develop the Plan of Allocation.

73.     In calculating the estimated artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Plaintiffs' damages expert considered price changes in Compass common stock in reaction to the public disclosures that allegedly corrected the respective alleged misrepresentations and omissions, adjusting the price changes for factors that were attributable to market or industry forces, and for non-fraud related Company-specific information.

74.     Under the Plan of Allocation, for each Class Period purchase/acquisition of Compass common stock that is properly documented, a "Recognized Claim Amount" will be calculated according to the formulas described in the Notice.[9]  As set forth in greater detail in the Notice, the

---

[9]     If, however, as expected, the amount of the Net Settlement Fund is not sufficient to permit payment of the total Recognized Claim Amount of each claimant, then each claimant shall be paid the percentage of the Net Settlement Fund

calculation of a claimant's Recognized Claim Amount is based on a formula that takes into account such information as: (a) when a claimant's share(s) of Compass common stock were purchased/acquired and whether they sold their stock during the Class Period, or retained their stock thereafter; (b) the amount of the alleged artificial inflation per share; (c) the purchase/acquisition price per share; and (d) the purchase price minus the average closing price for Compass common stock during the 90-day look-back period described in §21(D)(e)(1) of the Exchange Act.

75.    In sum, the Plan of Allocation, which is similar to plans routinely approved by courts, represents a reliable method by which to weigh, in a fair and equitable manner, the claims of Authorized Claimants.  To date, not a single Class Member has objected to the Plan of Allocation.

## VI.    LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

76.    Lead Counsel have zealously and diligently litigated this Action on behalf of the Class for over two years.  We undertook this effort on a contingency basis, and expended over 17,900 hours of professional and paraprofessional time litigating this Action.  In addition, Plaintiffs' Counsel have incurred a total of $368,527.48 in litigation expenses, costs, and charges. Accordingly, Lead Counsel, on behalf of Plaintiffs' Counsel,[10] respectfully request an award of attorneys' fees in the amount of 23.56% of the Settlement Amount and payment of $368,527.48 in costs and expenses, plus the interest earned on both amounts.  Plaintiffs' Counsel have submitted declarations that provide additional support for the requested fees and expenses. *See* Declaration of Darryl J. Alvarado Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), attached as Exhibit 4 hereto; Declaration of Thomas W. Elrod Filed on Behalf of Kirby McInerney LLP in Support of

---

that each claimant's Recognized Claim Amount bears to the total Recognized Claim Amount of all claimants – *i.e.*, the claimant's *pro rata* share of the Net Settlement Fund.

10    Plaintiffs' Counsel consists of Lead Counsel and Local Counsel.

- 23 -

Application for Award of Attorneys' Fees and Expenses ("KM Decl."), attached as Exhibit 5 hereto; Declaration of Norman E. Siegel Filed on Behalf of Stueve Siegel Hanson LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Stueve Siegel Decl."), attached as Exhibit 6 hereto; Declaration of Eugene S. Friedman Filed on Behalf of Friedman & Anspach, attached as Exhibit 7 hereto.  Counsel's fee and expense request is also supported by Plaintiffs.  To date, no objections to the maximum amount of attorneys' fees and expenses set forth in the notices have been received.[11]

### A.    Lead Counsel's Fee Request Is Reasonable

77.    Based on, among other things, the favorable result achieved in the face of considerable litigation risk, the time expended on behalf of the Class, and the fully contingent nature of the representation, we also respectfully submit that Plaintiffs' Counsel's request for an award of attorneys' fees equal to 23.56% of the Settlement Fund is fair and reasonable, and should be approved.

78.    The legal authorities supporting the requested fees and expenses are set forth in the accompanying Fee Memorandum.  The primary factual bases for the requested fees and expenses under the Tenth Circuit's factors are briefly summarized below.

### 1.    The Amount Involved and the Results Obtained

79.    The requested attorneys' fee is reasonable given the significant, all-cash $48 million recovery obtained by Plaintiffs' Counsel for the Class.  Considering that damages in this Action are estimated by Lead Counsel's damages expert to be approximately between $226 and $337 million depending on certain assumptions used to calculate the number of damaged shares, this recovery represents approximately 14% to 21% of the maximum potentially recoverable damages.  This is

---

[11]    Lead Counsel will address any objections received after this submission in their reply to be filed with the Court on July 23, 2025.

four to seven times the median settlement value as a percentage of estimated damages in cases of this size. *See supra*, at ¶57. Notably, the Settlement is four times greater than what the SEC obtained for resolving non-fraud-based claims. *Id.*

### 2. Awards in Similar Cases

80. As further detailed in the Fee Memorandum, the requested fee award is also consistent with customary attorneys' fees awarded in connection with other similar class action settlements in this District and other Districts in the Tenth Circuit and throughout the country.

### 3. The Considerable Time and Labor Expended by Plaintiffs' Counsel

81. As detailed above, Plaintiffs' Counsel expended significant time and effort litigating this Action. This Action was settled only after Plaintiffs' Counsel, among other things: (i) oversaw and participated in the extensive initial investigations; (ii) drafted an amended complaint which was significantly upheld in response to Defendants' motion to dismiss; (iii) identified, retained, and consulted with experts in, among other things, class certification and damages; (iv) opposed a comprehensive motion to dismiss; (v) briefed an opposition to Defendants' motion to certify the motion to dismiss order for interlocutory review; (vi) undertook extensive discovery, including analyzing more than 720,000 pages of documents; (vii) deposed six fact witnesses, (viii) engaged in contested discovery disputes before the Court, (ix) engaged in vigorous and protracted settlement negotiations with Defendants' Counsel; and (x) secured preliminary approval of the Settlement.

82. The following chart summarizes the aggregate hours and lodestar of Plaintiffs' Counsel set forth in the attached declarations.

| Table A: Plaintiffs' Counsel Summary of Hours and Lodestar by Firm | | |
| --- | --- | --- |
| **Firm Name** | **Hours** | **Lodestar** |
| Robbins Geller Rudman & Dowd LLP | 10,802.10 | $6,522,416.00 |
| Kirby McInerney LLP | 6,971.90 | $4,472,395.00 |
| Stueve Siegel Hanson LLP | 34.90 | $44,407.50 |
| Friedman & Anspach | 93.00 | $69,750.00 |
| **Total:** | **17,901.90** | **$11,108,968.50** |

83.    Moreover, the requested fee would also be reasonable under a lodestar cross-check. As summarized by Table A, Plaintiffs' Counsel have devoted a combined total of over 17,900 hours of work on this matter, with a combined total lodestar value of $11,108,968.50.[12]  These reports were prepared from contemporaneous time records regularly prepared and maintained by Plaintiffs' Counsel.  The hourly rates for the attorneys and professional support staff included in the schedule are commensurate with the hourly rates submitted by our respective firms to Courts in connection with fee applications that we have submitted (and that Courts have approved) in other fully-contingent securities class action cases.  As set forth in each declaration, each firm's lodestar figures are based upon the firms' current billing rates (subject to annual increases) and do not include charges for expense items.  *See also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-86 (1989) (courts may use either current rates or past rates with interest when calculating the lodestar amount because either method provides "[a]n adjustment for delay in payment [which] is . . . an appropriate factor in the determination of what constitutes a reasonable attorney's fee").

84.    Thus, the requested 23.56% fee would equate to a modest 1.02 multiple on the "lodestar" value of $11,108,968.50 for the more than 17,900 hours that Plaintiffs' Counsel have dedicated to the investigation, prosecution, and resolution of the claims against Defendants. Moreover, if final approval is granted, additional time will be expended by Plaintiffs' Counsel during the administration of the Settlement, and no additional fees or expenses will be sought.

### 4.    The Novelty and Difficulty of the Legal and Factual Questions

85.    This Action involved novel and difficult legal and factual questions, including the propriety of Plaintiffs' relying in part on the Consent Order as a basis for their claims.

---

[12]    These total hour and total lodestar figures include time incurred through June 13, 2025.  The additional time that Plaintiffs' Counsel have spent since that date – as well as all the additional time that Plaintiffs' Counsel expect to incur in connection with supervising the administration of the Settlement going forward – are all therefore excluded from counsel's time and lodestar calculations and no additional compensation will be sought for this time.

### 5. The Skill Required and the Experience, Reputation, and Ability of Counsel

86.     The skill required and the experience, reputation, and ability of the attorneys also support the requested fee award.  Lead Counsel are among the nation's preeminent law firms in securities litigation and for many years have successfully litigated securities actions on behalf of large classes of investors.  *See* RGRD Decl., Ex. F; KM Decl., Ex. D (attaching firm resumes).

87.     The Settlement of $48 million resulted from Plaintiffs' Counsel's litigation efforts and contentious, arm's-length settlement negotiations, as detailed herein.  The Settlement is a favorable recovery to the Class, especially in light of the risks of continued litigation.

88.     The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' Counsel.  Here, defense counsel, Cleary Gottlieb Steen & Hamilton LLP, is recognized as a preeminent defense firm in the securities class action field.

### 6. The Contingent Nature of the Fee Further Supports Plaintiffs' Counsel's Request

89.     The Action was undertaken by Plaintiffs' Counsel on a wholly contingent basis. From the outset, Plaintiffs' Counsel understood that they were embarking on complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money this Action would require.  In undertaking that responsibility, Plaintiffs' Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action and that funds were available to compensate staff and pay the considerable expenses that cases such as this entail.  Indeed, because of the nature of a contingent practice where cases are predominantly complex and last several years, not only do contingent-litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation.  With a lag time of many years for these cases to typically conclude, the financial burden on contingent counsel is far greater than that on a firm which is paid on an ongoing basis.  Here, Plaintiffs' Counsel have received no compensation (or

even any payment of their litigation expenses) to date in prosecuting the Action for the benefit of the Class.

90.     Plaintiffs' Counsel also bore the substantial risk that no recovery would be achieved. In this regard, we further note that there have been many hard-fought lawsuits where, because of discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by plaintiffs' counsel produced no recovery, and hence no attorneys' fees whatsoever.

91.     Accordingly, we submit that Plaintiffs' Counsel's hard work and success in achieving this highly favorable result in the face of significant challenges and risks merits the requested 23.56% fee.

### 7.     The Preclusion of Other Employment by Plaintiffs' Counsel and Undesirability of the Action

92.     As set forth in the Fee Memorandum, the requested fee award is also supported by preclusion of other employment and undesirability factors due to the financial and time burdens on Plaintiffs' Counsel.

### 8.     The Reaction of the Class

93.     As noted above, the deadline set by the Court for Class Members to object to the attorneys' fees and expenses has not yet passed; however, to date, Plaintiffs' Counsel are not aware of any objections.  If any objections are timely received, Plaintiffs' Counsel will address them in their reply papers to be filed with the Court on July 23, 2025.

### B.     Plaintiffs' Counsel's Request for Payment of Litigation Expenses Is Fair and Reasonable

94.     Plaintiffs' Counsel also seek payment for their reasonable and necessary litigation expenses in the amount of $368,527.48 (plus interest on such amount at the same rate as has been earned by the Settlement Fund).  The expenses for which payment is sought are reflected in the

books and records of Plaintiffs' Counsel which are maintained in the ordinary course of business, and prepared from expense vouchers, invoices, checking account ledgers, and similar documents that are accurate records of the expenses incurred.  *See* RGRD Decl., Ex. B; KM Decl., Ex. B; and Stueve Siegel Decl., Ex. B.  The RGRD Declaration provides an accounting of litigation fund contributions.  *See* RGRD Decl., Ex. E.

95.     The following schedule summarizes litigation expenses set forth in the individual declarations of Plaintiffs' Counsel.  *See* Exs. 4-6.

| Table B: Cumulative Expenses by Category | | |
|---|---|---|
| **Expense Category** | **Cumulative Expense** | **Percentage of Expenses** |
| Consultants/Investigators | $219,308.53 | 60.0% |
| Mediation Fees | $41,515.00 | 11.2% |
| eDiscovery Database Hosting | $39,027.00 | 10.6% |
| Transcripts & Other Reporting | $32,570.65 | 8.84% |
| Online Legal Research | $22,237.95 | 6.00% |
| Filing, Witness and Other Fees | $7,310.65 | 1.98% |
| Travel | $3,510.35 | 0.95% |
| Canadian Counsel | $1,940.45 | 0.53% |
| Messenger & Overnight Delivery | $1,106.90 | 0.30% |
| **Total Expenses:** | **$368,527.48** | |

96.     Based on the attached declarations, Plaintiffs' Counsel have incurred a total of $368,527.48 in costs, charges and expenses in connection with the prosecution of this Action.  We believe that the categories of expenses for which payment is sought were reasonably necessary to the prosecution and resolution of this Action, and are all of a type that counsel typically incur in securities litigation of this type.  Plaintiffs' Counsel's expenses include: (i) the costs of Plaintiffs' experts; (ii) the costs associated with taking and defending depositions; (iii) the costs necessary to provide document management services and review; (iv) online factual and legal research costs; (v) the costs associated with the Parties' mediation and settlement negotiations with Mr. Murphy; and (vi) document reproduction costs.

97.     The remaining expenses relate primarily to filing fees, transcript fees, travel, and postage/delivery service fees.

98.     The Notice advises potential Class Members that Plaintiffs' Counsel would seek an award of expenses not to exceed $450,000 – which is significantly more than Plaintiffs' Counsel's expenses.  As noted above, there have also been no objections to the expense request.

**C.      Plaintiffs' Request for an Award for Their Work on Behalf of the Class**

99.     The Notice also informed Class Members that Plaintiffs may seek awards not to exceed $30,000 in the aggregate in connection with their representation of the Class.  *See* Murray Decl., Ex. B (Notice at 2).

100.    Plaintiffs are sophisticated investors who have actively overseen the prosecution of this Action for over two years and they understand and have executed their fiduciary duty to act in the best interest of the Class.

101.    Local 338 requests an award of $10,000 and Local 295 requests an award of $10,000 for the time and effort each spent on this matter.  For the reasons set forth in the accompanying Fee Memorandum, we respectfully submit that the requested $20,000 awards (in the aggregate) are modest, and fully merited based on Plaintiffs' work here for the benefit of the Class.  We also note that no objections to these award requests have been submitted, which was set forth in the Notice.  *See* Murray Decl., Ex. B (Notice at 2).

**VII.    CONCLUSION**

102.    For the reasons set forth above, Lead Counsel respectfully submit that the Settlement and the Plan of Allocation should be approved as fair, reasonable, and adequate.  Lead Counsel further submit that the requested attorneys' fees in the amount of 23.56% of the Settlement Fund should be approved as fair and reasonable, and the request for Plaintiffs' Counsel's expenses in the

- 31 -

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of June 2025 at San Diego, California.

_____
DANA J. ALVARADO

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of June 2025 at New York, New York.

_____
ANDREW M. MCNEELA